**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Bobby Kent WALKER, Defendant–Appellant.**

**No. 89–5205.**

United States Court of Appeals, Tenth Circuit.

April 10, 1991.

Gordon Cecil, Asst. U.S. Atty. (Tony M. Graham, U.S. Atty., and Susan W. Pennington, Asst. U.S. Atty., on the brief), Tulsa, Okl., for plaintiff-appellee.

Kimberly Steele of Larry L. Oliver & Associates, P.C., (Larry R. Oliver of Larry L. Oliver & Associates, P.C.; and David Booth, Federal Public Defender, on the briefs) Tulsa, Okl., for defendant-appellant.

Before McKAY and MOORE, Circuit Judges, and SAFFELS, District Judge.*

JOHN P. MOORE, Circuit Judge.

Bobby Kent Walker was convicted of two counts of unlawful possession of a firearm by a felon under 18 U.S.C. §§ 922(g) and 924(e)(1). He was sentenced to 360 months plus a five-year term of supervised release. On appeal, Mr. Walker argues that during trial the district court improperly disallowed testimony of a witness for the de-

---

* The Honorable Dale E. Saffels, United States Senior District Judge for the District of Kansas, sitting by designation.

fense, that it misapplied the sentencing guidelines, and that § 922(g) violates the equal protection clause. We affirm.

The evidence offered at trial showed that on March 10, 1989, the defendant drove to the home of Richard Hyle, apparently because he was upset that Mr. Hyle was dating his ex-wife. Mr. Hyle saw the defendant's car pull up and went outside to speak with him. According to Mr. Hyle, the defendant pulled out a gun and fired several times, hitting Mr. Hyle once in the leg. Mr. Hyle retaliated in kind as Mr. Walker drove away. These events provide the basis for the first count of the indictment.

The defendant was arrested on March 29, 1989, at a bar in Tulsa, Oklahoma. One of the arresting officers testified that Mr. Walker tried to hide his weapon when he spotted the officer approaching, but he in no way attempted to use the weapon to prevent his arrest. These events provide the basis for the second count of the indictment.

I. *Disallowance of Certain Testimony by a Defense Witness*

The defendant argues that the district court improperly denied him the opportunity to impeach Mr. Hyle by limiting defendant's questioning of Agent Jaime Reyes of the Bureau of Alcohol, Tobacco, and Firearms, the case agent investigating the charges filed against the defendant. At the pretrial detention hearing, Agent Reyes stated that he learned Mr. Hyle was the first to shoot from "[i]nterviews through Mr. Hyle." Thus to impeach Mr. Hyle's trial testimony to the contrary, the defense called Agent Reyes.

The district judge cautioned defense counsel that for the purpose of impeaching Mr. Hyle, counsel could not ask Agent Reyes what Agent Reyes had testified to previously, but could only ask what Mr. Hyle had personally told him. This caution notwithstanding, defense counsel asked, "And did you, at one time or another during your work as a case agent, attain information of Mr. Hyle indicating that he fired first?" Agent Reyes answered, "No." At

that point, another bench conference occurred, and the district judge noted that defense counsel's question was improper because Mr. Hyle could only be impeached by his own prior inconsistent statements, not by what Agent Reyes might have known from other sources. The judge concluded that, regardless of the improper question, the issue was irrelevant because the witness answered the question in a manner that failed to impeach Mr. Hyle. The judge then refused to allow defense counsel to attempt to elicit further testimony from Agent Reyes, reasoning that Agent Reyes was called for the sole purpose of impeaching Mr. Hyle and was never called as a witness himself.

The defendant complains that the district court's refusal to allow counsel to further question Mr. Reyes was a denial of compulsory process. However, it is well settled that it is not improper for the trial judge to limit impeachment evidence on matters that are deemed collateral or irrelevant. *United States v. Warledo*, 557 F.2d 721, 726 (10th Cir.1977). This rule stems from the trial judge's power under Fed.R.Evid. 403 to exclude evidence which is more prejudicial, misleading, or confusing than probative. A matter has been held to be collateral if it could not have been introduced in evidence for any purpose independent of the impeachment. *State v. Oswalt*, 381 P.2d 617 (Wash.1963).

There is no dispute that the issue of whether at some prior time Mr. Hyle stated he had fired first was relevant only for impeachment purposes. The indictment charged only the status offense of possession of a weapon and did not include assault charges. Who fired first was irrelevant to the issue of guilt. The defense effort to impeach Mr. Hyle on the issue of who fired first was therefore a collateral issue.

The trial judge's ruling is consistent with several courts' and commentators' treatment of collateral evidence introduced solely for impeachment purposes. In *United States v. Nace*, 561 F.2d 763, 770 (9th Cir.1977), the Ninth Circuit held that "im-

peachment ... on a collateral matter ... was properly excluded in the discretion of the trial court." *Id.* (citing *United States v. Carrion*, 463 F.2d 704 (9th Cir.1972); *Lenske v. Knutsen*, 410 F.2d 583 (9th Cir. 1969); *Ramirez v. United States*, 294 F.2d 277 (9th Cir.1961)). In addition, commentators agree that: "If the witness denies making a statement on a matter classified as collateral, his examiner must take his answer—that is, he may not prove the making of the statement by extrinsic evidence." J. Weinstein & M. Berger, *Weinstein's Evidence* § 607[06] at 607–107 (citing *Cwach v. United States*, 212 F.2d 520, 529–30 (8th Cir.1954) among others); *see also* E.W. Cleary, *McCormick on Evidence* § 36 at 77 (3d ed. 1984) and cases cited therein. This analysis is supported by our decision in *United States v. Bradshaw*, 787 F.2d 1385, 1392 (10th Cir.1986), where we held that the trial court did not abuse its discretion in refusing to grant a continuance where the evidence sought "would have been limited to impeaching [the witness] on a collateral matter."

However, adherence to established rules of evidence does not necessarily assure that the district court has complied in this case with the defendant's Sixth Amendment rights to confrontation and cross-examination. The confrontation clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution to confront adverse witnesses, *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), as well as the opportunity to cross-examine hostile witnesses. *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974). These Sixth Amendment rights, however, are not unlimited. As the Supreme Court noted in *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986):

> trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.

The Court in *Van Arsdall* found a violation of the defendant's confrontation clause rights, but only because the trial judge cut off *all* inquiry into a material matter. *Id.*

The actions of the district judge in the present case are consistent with the limits to confrontation clause rights enunciated in *Van Arsdall*. In fact, the competing concerns listed by the *Van Arsdall* Court are many of the same concerns contained in Fed.R.Evid. 403 granting the trial court discretion to exclude evidence that is prejudicial, misleading, confusing, or wasteful. Again, that is not to say that a proper Rule 403 ruling will subsume the constitutional issue, but it does identify the types of competing interests a court may consider in determining the proper constitutional limits to a defendant's Sixth Amendment right to confrontation and cross-examination.

Therefore, we hold that the district court did not abuse its discretion in not allowing the further interrogation of Agent Reyes after he answered that he had not been made aware that Mr. Hyle had fired first. The question put to the witness was unclear; therefore, despite Agent Reyes' testimony at the detention hearing, his response may not have been inconsistent. Moreover, it was relevant only for the purposes of impeaching Mr. Hyle. It was within the district court's discretion in both the context of Rule 403 and the Sixth Amendment confrontation clause to hold that the defendant had to take Agent Reyes' answer, and could not further question Agent Reyes as a means to impeach Mr. Hyle on a collateral issue.

II. *Application of the Sentencing Guidelines*

The defendant argues that the district judge's sentencing him as a career offender under U.S.S.G. § 4B1.1 was error as a matter of law. Under the Guidelines, a defendant is a career offender if:

> (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least

two prior felony convictions of either a crime of violence or a controlled substance offense.

The defendant concedes that he satisfies points one and three, but argues that the offense of possession of a firearm by a convicted felon cannot be a crime of violence under point two. He cites 18 U.S.C. § 16, incorporated by reference in § 4B1.1, which defines a crime of violence as:

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The defendant cites *United States v. Selfa*, 918 F.2d 749, 751–52 (9th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 521, 112 L.Ed.2d 532 (1990), and *United States v. Sherbondy*, 865 F.2d 996, 1006–10 (9th Cir. 1988), for the proposition that a sentencing court is limited to examination of the *elements of the statute violated* in determining the threat of physical violence to another. The *Sherbondy* court stated: "There is no indication that Congress intended that a particular statutory or common law crime would in some circumstances constitute a common law felony and in other circumstances not, depending on how the offense was committed...." *Id.* at 1008.

■ However, the Sentencing Guidelines' definition of a crime of violence in effect at the time the defendant was sentenced governs this case. *See United States v. Brunson*, 907 F.2d 117, 120 (10th Cir.1990); *United States v. McNeal*, 900 F.2d 119 (7th Cir.1990); *United States v. Williams*, 892 F.2d 296, 304 (3d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3221, 110 L.Ed.2d 668 (1990). Therefore, § 4B1.1 and accompanying commentary will be analyzed as it existed on November 29, 1989, the date of sentencing.

■ As of November 1, 1989, § 4B1.2 defined a crime of violence as any offense that:

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(ii) is a burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Application Note 2 to § 4B1.2 states:

Often offenses are included [as crimes of violence] where (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth in the count of which the defendant was convicted involved the use of explosives or, by its nature, presented a serious potential risk of physical injury to another.

The November 1, 1989 amendments to both § 4B1.2 and Application Note 2 make clear that the sentencing judge may consider the underlying conduct of the defendant in committing the offense unfettered by the elements of the offense. The commentary to the amendment states that "[t]he purpose of this amendment is to clarify the definitions of crime of violence and controlled substance offense used in this guideline." *See* Appendix C, amendment 268. As the November 1, 1989 amendment is merely a clarification of the pre-November 1, 1989 definition of a crime of violence, we will examine the treatment of this issue by courts prior to the effective date of the amendment as guidance for construction of the post-November 1, 1989 language.

The cases cited by the defendant and those cited by the government appear at first to be in conflict over the issue of whether prior to November 1, 1989, a sentencing court could have examined the underlying conduct of the defendant in determining whether the crime committed was a crime of violence for the purposes of § 4B1.1. However, closer examination shows that these cases can be easily reconciled. While the *Sherbondy* and *Selfa* courts, cited by the defendant, did hold that crimes of violence may be defined only by the elements of the crime charged, these cases concerned determinations of whether

*prior convictions* constituted crimes of violence for the purposes of sentencing under § 4B1.1. These courts adopted this practical rule to avoid "ad hoc mini-trials regarding an individual's prior criminal conduct. The problems with such hearings are evident. Witnesses would often be describing events years past. Such testimony is highly unreliable.... Additionally, there would likely be substantial problems with court records and transcripts relating to earlier convictions." *Sherbondy*, 865 F.2d at 1008. However, these concerns do not apply when the court is examining the conduct of the defendant in the instant offense. *See United States v. Coble*, 756 F.Supp. 470, 473–74 (E.D.Wash.1991). Therefore, we hold *Sherbondy* and *Selfa* are inapposite when the issue is whether the conduct which is the subject of the current charges constitutes a crime of violence.

Once the cases concerning examination of prior convictions are distinguished, it is evident that prior to November 1, 1989, courts consistently held that possession of a firearm by a convicted felon can constitute a violent crime for the purposes of sentencing as a career offender. However, they were divided on the exact rationale for reaching this conclusion. The Ninth Circuit in *United States v. O'Neal*, 910 F.2d 663 (9th Cir.1990), held that under 18 U.S.C. § 16, the referenced definition of a crime of violence under § 4B1.1 prior to November 1, 1989, *any* conviction under § 922(g) of being a felon possessing a firearm *by its nature* poses the requisite substantial risk that force will be used. According to this rationale, the underlying conduct of the defendant is irrelevant because it is assumed that any convicted felon possessing a firearm is necessarily a substantial threat to persons and property.

Other courts read the "by its nature" language of 18 U.S.C. § 16 less comprehensively, and instead focussed on the commentary to § 4B1.2, referenced by § 4B1.1, which prior to November 1, 1989 stated in Application Note 1:

> The Commission interprets [a crime of violence] as follows: murder, manslaugh-ter, kidnapping, aggravated assault, extortionate extension of credit, forcible sex offenses, arson, or robbery are covered by this provision. Other offenses are covered only if *the conduct for which the defendant was specifically convicted meets the above definition.* For example, conviction for an escape accomplished by force or threat of injury would be covered; conviction for an escape by stealth would not be covered.[1]

*See United States v. Alvarez*, 914 F.2d 915, 918 (7th Cir.1990); *United States v. Goodman*, 914 F.2d 696, 698–99 (5th Cir.1990); *United States v. McNeal*, 900 F.2d 119, 122–23 (7th Cir.1990); *United States v. Williams*, 892 F.2d 296, 304 (3d Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 3221, 110 L.Ed.2d 668 (1990); *United States v. Thompson*, 891 F.2d 507, 509–10 (4th Cir. 1989), *cert. denied*, — U.S. —, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990). In *Williams* and *McNeal*, the Third and Seventh Circuits determined that possession of a firearm where there is evidence that it had been fired constituted a crime of violence. Specifically, in *Williams*, the court reviewed the examples in Application Note 1 and concluded that "possessing a gun while firing it ... is a crime of violence; possession without firing the weapon is not." In *Thompson*, the Fourth Circuit held that the mere pointing of a gun constitutes a crime of violence, and in *Alvarez* and *Goodman*, the Seventh and Fifth Circuits held that possession plus evidence of intent to fire the weapon constituted a crime of violence for the purposes of § 4B1.1.

■ Concluding that Application Note 1 to § 4B1.1, even prior to November 1, 1989, strongly implied that the defendant's conduct may be taken into consideration by the sentencing court, and noting that the Application Notes are entitled to substantial weight in interpreting the Guidelines, *United States v. White*, 888 F.2d 490 (7th Cir. 1989), we agree with the majority of circuits that, even prior to November 1, 1989, the conduct of the defendant in the instant offense can be taken into consideration in determining whether the defendant has committed a crime of violence for the pur-

---

1. The language quoted above is taken from the pre-November 1, 1989 Application Note.

poses of sentencing under § 4B1.1. However, we disagree with the *O'Neal* court's use of the "by its nature" language to hold that possession of a firearm by a convicted felon necessarily constitutes a crime of violence. *See United States v. Hernandez,* 753 F.Supp. 1191 (S.D.N.Y.1990) (declining to follow the logic of *O'Neal* ). Since the defendant's conduct in the present case involves the actual firing of the firearm at a person, it falls squarely within the reasoning of *Williams* and *McNeal.* Therefore, even if the defendant had been sentenced prior to November 1, 1989, we would have reached the same conclusion. This is consistent with the Guidelines' commentary that the amendments to § 4B1.2 were meant to clarify and not to change the definition of a crime of violence. Accordingly, we hold the district court did not err in finding that the defendant's possession of a firearm was a crime of violence.

This conclusion only applies to the count concerning the incident at Mr. Hyle's house on March 10, 1989. The record shows no conduct attendant to the second count which can be construed as a crime of violence. This, however, is small consolation for the defendant, as the first count is sufficient to qualify him as a career offender under § 4B1.1.

III. *Whether Section 922(g)(1) Violates the Equal Protection Clause*

The defendant argues that because § 922(g)(1) only applies to firearms that have been involved in interstate commerce, it violates the equal protection clause by discriminating against convicted felons who live in states without firearms manufacturers. However, this argument has been rejected by numerous courts, *see, e.g., United States v. Wynde,* 579 F.2d 1088 (8th Cir.), *cert. denied,* 439 U.S. 871, 99 S.Ct. 204, 58 L.Ed.2d 184 (1978), and cases cited therein, and the defendant fails to distinguish his argument from those rejected previously. We therefore see no merit in his argument.

AFFIRMED.