UNITED STATES of America, Plaintiff–Appellee,

v.

Reva YOUNG, a/k/a Reva L. Mabary, Defendant–Appellant.

No. 91–3147.

United States Court of Appeals, Tenth Circuit.

Dec. 31, 1991.

Tanya J. Treadway (Lee Thompson, U.S. Atty., with her on the brief), Asst. U.S. Atty., Kansas City, Kan., for plaintiff-appellee.

Michael L. Harris (Charles D. Anderson, Federal Public Defender, with him on the brief), Asst. Federal Public Defender, Kansas City, Kan., for defendant-appellant.

Before HOLLOWAY, MOORE and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

Reva Young appeals her conviction for bank fraud for opening an unauthorized checking account in her employer's name and drawing checks thereon which she used for personal expenses.

In November 1988, Ms. Young began working part-time for Dr. Henry Habib in his medical office. Her duties included making appointments, billing, opening the mail, answering the telephone and assisting with female patients. When the doctor began solo practice, Ms. Young became a full-time employee receiving an annual salary of approximately $18,000 a year. Since 1970, Dr. Habib maintained a corporate checking account at Citizens–Jackson County Bank for which he was the only autho-

rized signer. The doctor was paid primarily by insurance checks made payable to the corporation, which arrived in the mail. As part of her office duties, Ms. Young was responsible for depositing those checks in the corporate account. Ms. Young, without authorization, attempted to gain signatory authority for this account but was refused by bank personnel.

In January 1989, Ms. Young opened an account in the name of Dr. Habib at the Douglass Bank in Kansas City, Kansas. She made the initial deposit with insurance checks made payable to him. Ms. Young's neighbor, a bank officer, introduced her to the new accounts representative. The representative gave Ms. Young paperwork for Dr. Habib to sign authorizing the account but the papers were never returned to the bank. Because the bank did not have a signature card for Dr. Habib it initially refused payment on checks drawn on the account. Subsequently, Ms. Young sent a handwritten letter authorizing payment and represented she was an authorized signer on the account. During the life of the account, Ms. Young deposited approximately $25,000 of Dr. Habib's money in the account and wrote checks for personal expenses totalling over $24,000. Ms. Young, and only Ms. Young, signed all the checks written on the account.

In early August 1989, Ms. Young failed to show up for work for several days because she was in jail for a probation violation stemming from an attempted felony theft conviction which she did not disclose to Dr. Habib. Because of her unexplained absence, Dr. Habib fired Ms. Young.

Soon thereafter, Dr. Habib received an insufficient funds notice in the mail. Perplexed, he sent his wife to Citizens–Jackson County Bank to check it out. A bank officer discovered the Douglass Bank checking account and reported this to Dr. Habib. This was the first Dr. Habib knew of the bank or the checking account in his name. The bank released the balance of the account to the doctor. Dr. Habib instituted suit against the bank and this was settled out of court by the bank paying Dr. Habib $19,000.

Ms. Young was charged with executing a scheme to defraud a financial institution in violation of 18 U.S.C. § 1344 and interstate transportation of stolen property in violation of 18 U.S.C. § 2314. At trial, a jury found Ms. Young guilty of both crimes.

At trial Ms. Young attempted to present evidence of Dr. Habib's bias against her. Specifically, Ms. Young alleged she was fired, not because of unexcused absence, but because she confronted the doctor about possible medical malpractice exposure. The government had filed a motion in limine to exclude any reference to medical malpractice which the trial court granted. Ms. Young also sought to introduce evidence concerning the civil litigation between the doctor and Douglass Bank regarding the alleged unauthorized account. Ms. Young claims the doctor had incentive to claim he knew nothing about the account because the bank reimbursed him for the loss. Ms. Young claimed Dr. Habib authorized the account in return for sexual favors. Although the government moved in limine to exclude evidence about the settlement as it related to the bank's negligence, it did not contest this evidence could be used to show bias or prejudice. The trial court reserved judgment on the matter. During the course of the trial Ms. Young did not attempt to elicit information regarding the settlement.

Finally, in response to Dr. Habib's response on cross-examination that he had never previously accused an employee of embezzlement, Ms. Young attempted to introduce testimony of a former employee to rebut Dr. Habib's claim. Ms. Young sought to use this evidence to show honesty or dishonesty under Fed.R.Evid. 608(b) and as a prior civil wrong to show plan or intent under Fed.R.Evid. 404(b). The court found this to be a collateral matter and ruled it inadmissible.

Ms. Young appeals and asserts as error: (1) the facts do not support bank fraud because use of the bank was only incidental to the fraud; (2) the court erred by denying cross-examination of Dr. Habib on matters regarding bias or prejudice; and (3) the court erred by precluding introduc-

tion of testimony of a prior employee that Dr. Habib accused her of embezzlement.

## I. BANK FRAUD

■ A jury found Ms. Young guilty of bank fraud in violation of 18 U.S.C. § 1344(a)(1) (1989) which provides that "[w]hoever knowingly executes ... a scheme or artifice to defraud a federally chartered or insured financial institution" shall be guilty of a crime.[1] Ms. Young stole insurance checks payable to her employer and deposited them in the unauthorized account she opened in her employer's name at Douglass Bank. She subsequently sent the bank a letter claiming to be a signatory on the account and the bank, relying upon this letter, cashed over $24,000 worth of checks drawn by Ms. Young and used by her for her personal expenses.

Ms. Young claims that "18 U.S.C. § 1344(1) does not cover these situations in which a financial institution is incidentally, or peripherally involved" and challenges the sufficiency of the evidence to establish a bank fraud violation. Ms. Young asserts the bank in this case was not the target, the object or an indispensable part of the scheme and therefore she did not defraud the bank so as to violate § 1344(1). Thus, the issue Ms. Young presents is whether her conduct of depositing stolen checks into an unauthorized account, representing to the bank she was a signatory on the account and then signing checks for her personal expenses is cognizable under the bank fraud statute. *See United States v. Cronic*, 900 F.2d 1511, 1512 (10th Cir.1990) (although appeal is "couched in terms of sufficiency of the evidence" Appellant's basic argument is that his conduct is not criminalized under the section of federal statute with which he is charged).

The government argues Ms. Young's conduct victimized the bank through deceit therefore bringing it within the purview of the bank fraud statute. The government identifies two separate acts of deceit directed toward the bank: Ms. Young's implied misrepresentation that she had authority to open a checking account in Dr. Habib's name and Ms. Young's express misrepresentation to the bank through her handwritten letter that she had authority to sign checks on the account. The government claims her acts deceived not only her employer but the bank as well. The government contends the theft from her employer could not have occurred without these acts of deceit directed toward the bank as Ms. Young had no access to the corporate account. Therefore, the government argues, the Douglass bank was an indispensable part of her scheme to defraud. Finally, the government contends §§ 1344(1) and 1344(2)[2] of the bank fraud statute overlap and evidence used to establish a subsection 2 violation can establish a subsection 1 violation as well.

■ We review the question of whether defendant's conduct is prohibited by a federal statute under a non-deferential de novo standard. *United States v. Bonnett*, 877 F.2d 1450, 1454 (10th Cir.1989). Our review of the record finds the government's arguments to be more persuasive and we uphold Ms. Young's conviction under § 1344(1).

Congress enacted the current bank fraud statute (18 U.S.C. § 1344) in 1984 in response to various Supreme Court decisions[3] which narrowed the application of the then existing bank fraud statute. *Bonnett*, 877 F.2d at 1454. The bank fraud statute was modeled after the mail and wire fraud statutes (18 U.S.C. §§ 1341, 1344) which courts have construed very broadly. *Bonnett*, 877 F.2d at 1454. The bank fraud statute contains virtually the same language as the mail and wire fraud

---

**1.** The 1989 version of § 1344 applies as Ms. Young committed the acts charged in 1989. The substantive elements of the crime have remain unchanged. Only the penalty and the subsection numbering have been revised. Section 1344(a)(1) is now § 1344(1) and we will refer to the statute's current numbering for the purposes of this discussion.

**2.** Section 1344(2) criminalizes knowing execution of a scheme or artifice to obtain money by false and fraudulent pretenses, representations, or promises.

**3.** *See, e.g., Williams v. United States*, 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982).

statutes. Likewise, courts have construed the bank fraud statute liberally. *See id.,* 877 F.2d at 1450. *Accord United States v. Matousek,* 894 F.2d 1012, 1014 (8th Cir.), *cert. denied,* 494 U.S. 1090, 110 S.Ct. 1832, 108 L.Ed.2d 961 (1990); *United States v. Gunter,* 876 F.2d 1113 (5th Cir.) *cert. denied,* 493 U.S. 871, 110 S.Ct. 198, 107 L.Ed.2d 152 (1989); *United States v. Bonallo,* 858 F.2d 1427, 1432–33 (9th Cir. 1988).

The bank fraud statute sets forth two prohibited offenses. *Bonnett,* 877 F.2d at 1453. Each of the two offenses share common elements and thus their proof overlap. *United States v. Medeles,* 916 F.2d 195, 198 (5th Cir.1990). For example, each offense requires the criminal act be directed against a federally chartered or insured financial institution, and each requires a knowing execution of a scheme or artifice. *Id.* " '[S]cheme' and 'artifice' are defined to include ... fraudulent pretenses or misrepresentations intended to deceive others to obtain something of value, such as money, from the institution to be deceived." *United States v. Lemons,* 941 F.2d 309, 314–15 (5th Cir.1991).

To establish a violation of subsection 1, the government must prove the scheme defrauded a financial institution. *Bonnett,* 877 F.2d at 1453. Subsection 2 requires a scheme intended to obtain money under custody or control of the institution by fraudulent means. *Medeles,* 916 F.2d at 198.

■ The government charged Ms. Young under § 1344(1); therefore it must prove a scheme which *defrauded* the financial institution. *Bonnett,* 877 F.2d at 1453 (emphasis in original). The scheme to defraud requirement of § 1344 has not been precisely defined. *United States v. Goldblatt,* 813 F.2d 619, 624 (3d Cir.1987). A scheme to defraud need not be executed by means of misrepresentation but it does not exclude misrepresentations. *United States v. Rafsky,* 803 F.2d 105, 108 (3d Cir.1986)

(analysis of mail fraud statute), *cert. denied,* 480 U.S. 931, 107 S.Ct. 1568, 94 L.Ed.2d 760 (1987).

We find *United States v. Morgenstern,* 933 F.2d 1108 (2d Cir.1991), *petition for cert. filed* (U.S. Nov. 7, 1991) (No. 91–6371), instructive in the instant case.[4] In *Morgenstern* the defendant challenged the applicability of § 1344 to his conduct where his scheme to defraud was directed at his employer and not the bank. The defendant developed a scheme whereby he misrepresented the amount of tax liability owed by his employer. The employer made out a check in the inflated amount which the defendant was to deposit in a depository account at the bank. Rather than deposit the inflated checks in the employer's depository account as required, the defendant deposited them in a corporate account under his control. He then withdrew the excess money for personal expenses. During this period the defendant also made legitimate deposits into both the accounts. When the defendant's responsibilities with his employer changed, he modified the scheme. No longer having access to the tax checks, the defendant took checks payable to other entities which he was supposed to mail and, using a pen eraser, erased the name of the payee and substituted the name of the depository account. He also altered the dollar amount of the checks. *Id.* at 1110–11.

The defendant argued he committed fraud against his employer and not the bank and therefore he could not be convicted under § 1344. *Id.* at 1112. The government contended his fraud deceived the bank as well as his employer. The *Morgenstern* court found fraud against the bank where the defendant misrepresented his authority to deposit checks, neither signed nor payable to the defendant, into an account controlled by him. *Id.* at 1113. The court also found that although the case could have proceeded in state court, federal

---

**4.** Although the defendant in that case was charged under § 1344(2) the court analyzed his "scheme to defraud the bank" which is an element under § 1344(1). The court found the

defendant's conduct victimized the bank—a requirement of § 1344(1) that is not necessary under § 1344(2).

court retains jurisdiction where the elements of bank fraud are met. *Id.* at 1113.

We find Ms. Young's conduct is cognizable under § 1344(1). We find she knowingly executed a scheme to defraud a bank. As noted above, a scheme can involve fraudulent misrepresentations to deceive a bank to obtain money. *See Lemons,* 941 F.2d at 314–15. The fraudulent misrepresentations which Ms. Young made to the bank constitute her scheme to defraud. In this case, Ms. Young made two misrepresentations intending to deceive the bank so she could access the bank's money through Dr. Habib's account. As in *Morgenstern,* Ms. Young misrepresented to the bank she had authority to deposit the checks. Where the defendant in *Morgenstern* deposited the checks in a separate account under his control, Ms. Young similarly deposited the checks into an account under her control. Although the account was opened in the doctor's name, the doctor knew nothing about the account, knew nothing about the bank and the bank had no paperwork with his authorization for the account. Fundamentally, the account was under Ms. Young's control.

If this was the only evidence of Ms. Young's deceit directed at the bank, we might not have such an easy time disposing of the case. However, Ms. Young made additional misrepresentations to the bank. She sent the bank a letter representing she was a signatory on the account in Dr. Habib's name. This misrepresentation was a direct attempt to deceive the bank so Ms. Young could have access to the bank's money in Dr. Habib's account. She attempted to write checks on the account. The bank refused to honor the checks. To gain access to the money, Ms. Young was forced to represent to the bank she was authorized to sign on the account. Relying on this misrepresentation, the bank allowed Ms. Young access to Dr. Habib's account— access she did not have absent this express misrepresentation of authority. Ms. Young's conduct clearly was designed to defraud the bank as well as Dr. Habib. *See Morgenstern,* 933 F.2d at 1113. Accordingly, the Douglass Bank was a victim of Ms. Young's scheme of fraud. *See*

*United States v. Hubbard,* 889 F.2d 277, 280 (D.C.Cir.1989) (bank must be a victim of scheme to defraud). To support a § 1344 conviction the government does not have to prove the bank suffered any monetary loss, only that the bank was put at potential risk by the scheme to defraud. *Lemons,* 941 F.2d at 316 (by distributing customer funds to an unauthorized party, banks are put at risk).

The *Morgenstern* court found the bank was an intended victim where the fraudulent conduct "resulted in the improper release to a third party of a depositor's money without [his] authorization." 933 F.2d at 1114. That court found where the challenged conduct exposed the bank to civil litigation the conduct victimized the bank. *Id.* Ms. Young's misrepresentations to the bank put the bank at risk, and thus Douglass bank was a victim of Ms. Young's scheme to defraud. In fact, Ms. Young's conduct resulted in the bank's payment of $19,000 to Dr. Habib to avoid civil litigation. There can be no question Ms. Young's scheme of fraud created risk to and thus victimized the bank.

## II. CROSS–EXAMINATION REGARDING BIAS OR PREJUDICE

Prior to trial, the government moved in limine to exclude evidence regarding any claims of medical malpractice against the doctor and also any evidence of the civil litigation between the doctor and Douglass Bank concerning the alleged unauthorized account. Ms. Young objected asserting she was terminated for confronting the doctor about medical malpractice claims and therefore the evidence would be probative of bias or hard feelings on the part of the doctor toward Ms. Young. Ms. Young also claimed the settlement between the doctor and the bank provided incentive for him to continue to deny authorizing the checking account when in fact he did approve it and was fully aware of its existence. Ms. Young alleges this evidence is also probative of bias or prejudice.

The court sustained the government's motion to exclude reference to malpractice claims because the prejudicial effects greatly outweighed any probative value. The court reserved ruling on the civil litigation evidence. Ms. Young never pursued that theory of bias during the trial.

Ms. Young appeals and asserts that by precluding her from examining Dr. Habib's possible bias in those areas the district court violated her constitutional right to confrontation. Ms. Young's assertion warrants little discussion.

### A. Medical Malpractice

■ Ms. Young argues her inability to examine Dr. Habib on his bias toward her for confronting him about potential medical malpractice liability violates her Sixth Amendment right to confrontation. The government argues the trial court's decision to withhold the evidence was not a constitutional violation but merely a proper exercise of its discretion.

■ The Supreme Court has stated that even faced with the Sixth Amendment confrontation clause, the trial court retains discretion to reasonably limit the scope of cross-examination. *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). The confrontation clause guarantees the right to effective cross-examination when attempting to show bias. *United States v. Swingler,* 758 F.2d 477, 497 (10th Cir.1985). However, these rights are not unlimited. *United States v. Walker,* 930 F.2d 789, 792 (10th Cir.1991). The Supreme Court lists factors to weigh regarding the confrontation clause similar to the factors weighed in a Fed.R.Evid. 403 analysis. An analysis under Fed.R.Evid. 403 will not in all cases subsume the constitutional issue. *Id.* Under Fed.R.Evid. 403,[5] a trial judge can exclude evidence relevant to the witness's bias if its probative value is substantially outweighed by the danger of unfair prejudice. *Id.; C.A. Associates v. Dow Chemi-*

*cal Co.,* 918 F.2d 1485, 1489 (10th Cir.1990). Because of its familiarity with the evidence, the trial judge is in a better position to make such a conclusion, and we will overturn his decision only if it represents a manifest abuse of discretion. *Id.*

The trial court conducted the government's motion in limine outside the jury's hearing to determine what evidence would be presented concerning medical malpractice. Ms. Young sought to introduce evidence Dr. Habib fired her because she confronted him about possible medical malpractice liability and not because of her unexcused absence. Ms. Young contended her testimony and cross-examination of Dr. Habib would show bias against her. The government asserted that any mention of medical malpractice would be highly prejudicial. After both sides had an opportunity to present arguments, the court found that "from what counsel [has said], any possible evidence as to malpractice is so remote and the prejudicial effect greatly outweighs any possible probative value at this point." We do not find the trial court abused its discretion. Consequently, in this case we find no confrontation clause violation.

### B. Civil Litigation

■ Ms. Young asserts the exclusion of evidence of the civil litigation and settlement between Dr. Habib and Douglass Bank also violated her Sixth Amendment right to confrontation. The government contends the trial court deferred ruling on the motion to exclude this evidence and Ms. Young nonetheless failed to pursue this theory of bias at trial. Our review of the record reveals the government is correct. The court did reserve ruling on the civil litigation question. As we only have jurisdiction to rule on final decisions of the district court, where the defendant failed to pursue a proposed theory and thus did not receive a final decision we have no jurisdiction to address her claim. 28 U.S.C. § 1291; *Tri–State Generation & Trans-*

---

5. Fed.R.Evid. 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*mission Ass'n, Inc. v. Shoshone River Power, Inc.,* 874 F.2d 1346, 1351 (10th Cir. 1989).

## III. PRIOR ACCUSATIONS OF THEFT

█ On cross-examination, Ms. Young asked Dr. Habib whether he had ever accused Cathy Staggs, a former employee, of embezzling money from his office account. Dr. Habib denied the accusation. During her case in chief Ms. Young attempted to call Ms. Staggs to testify that the doctor accused her of embezzling. Ms. Young sought to use the testimony to show honesty or dishonesty under Fed.R.Evid. 608(b) and to show Dr. Habib's plan and intent to wrongly accuse employees under Fed. R.Evid. 404(b). The government argued that extrinsic evidence cannot be used to prove the credibility of a witness under Fed.R.Evid. 608(b). The trial court found it was a purely collateral matter and was inadmissible under either rule.

Ms. Young appeals and asserts the testimony was admissible "under Rule 404(b) as evidence if [sic] intent to falsely accuse employees of theft."

█ We review the admissibility of evidence under an abuse of discretion standard. *United States v. Harmon,* 918 F.2d 115, 118 (10th Cir.1990). We will only reverse a trial court's evidentiary ruling where we are left with a "definite and firm conviction that the [trial] court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Bonnett,* 877 F.2d at 1458 (quoting *United States v. Ortiz,* 804 F.2d 1161, 1164 n. 2 (10th Cir.1986)). We find the trial judge did not abuse his discretion by denying Ms. Young the ability to present Ms. Staggs' testimony.

Ms. Young contends Ms. Staggs' proffered testimony is admissible under Fed. R.Evid. 404(b) which provides that "[e]vidence of other ... acts is not admissible to prove the character of a person ... to show [that he acted] in conformity therewith. It may ... be admissible ... as proof of ... intent [or] plan...." Through Ms. Staggs' testimony, Ms. Young sought to show Mr. Habib's intent or plan to make false embez-

zlement charges against his employees. Ms. Young's argument contains no merit.

Ms. Staggs would have testified she worked in a doctor's office which Dr. Habib took over and consolidated with his own. Ms. Staggs continued to work in the office doing clerical work. She would also testify that in January of 1988, Dr. Habib indirectly accused her of embezzling, which she denied. She quit and left not on good terms with Dr. Habib.

While Ms. Young sought to impeach the doctor under 404(b), the effort was unavailing because the alleged facts were collateral and not impeaching. The issue of whether Dr. Habib accused another employee of embezzlement is collateral to whether Ms. Young's conduct constitutes bank fraud. Dr. Habib denied he accused a former employee of embezzlement. Ms. Young wanted the employee to impeach Dr. Habib's earlier testimony. We have said, "If the witness denies making a statement on a matter classified as collateral, his examiner must take his answer—that is, he may not prove the making of the statement by extrinsic evidence." *Walker,* 930 F.2d at 792 (citations omitted). Thus, the use of Ms. Staggs' testimony to refute Dr. Habib's earlier denial would be improper.

We find the trial court did not abuse its discretion in excluding this evidence. We find Ms. Young's conduct of opening an unauthorized checking account and misrepresenting to the bank her signatory authority is cognizable under 18 U.S.C. § 1344(1). We also find the trial court did not abuse its discretion by excluding evidence of potential medical malpractice claims or claims by a former employee of embezzlement accusations to prove plan or intent. Finally, we have no jurisdiction to decide an issue upon which the trial court reserved ruling but the proponent abandoned during the course of the trial. The trial court is AFFIRMED.