**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Arnulfo C. OLIVO, Defendant–Appellant.**

**No. 94–5178.**

United States Court of Appeals,
Tenth Circuit.

April 3, 1996.

---

13. In *Price,* both Mr. Price and another individual, Mr. Stubbs, entered a bank and, while Mr. Stubbs "brandish[ed]" a gun, Mr. Price collected money. Mr. Price was charged with both using and carrying a firearm during and in relation to the bank robbery, as well as aiding and abetting, both in violation of § 924(c)(1). In concluding that the jury instruction on "use or carry," incorrect in light of *Bailey,* was harmless error, the court observed that the evidence was such that the jury "inevitabl[y] ... found that Mr. Price

was one of the masked men who robbed the bank, and, more specifically, that he was the man who jumped over the counter and collected the money while Mr. Stubbs was brandishing the gun." *Price,* 76 F.3d at 529. The court went on to state, "[t]hat Mr. Stubbs both 'used' and 'carried' the firearm within the statutory meaning is perfectly clear," and found that the evidence that Mr. Price aided and abetted that use and carrying was "overwhelming." *Id.*

William D. Lunn, Tulsa, Oklahoma, for appellant.

Allen J. Litchfield, Assistant United States Attorney, Tulsa, Oklahoma (Stephen C. Lewis, United States Attorney, Tulsa, Oklahoma, with him on the brief), for appellee.

Before MOORE, HENRY, and BRISCOE, Circuit Judges.*

BRISCOE, Circuit Judge.

Arnulfo Olivo filed a petition for rehearing, seeking rehearing on two issues—the admission of subsequent bad act evidence and the limitation placed upon Olivo's impeachment of Lonnie Vaughan. He also moved to supplement the record on appeal to include all previously-designated materials, arguing the record this court reviewed prior to issuing its opinion did not include all materials that he had in fact designated. We granted the petition for rehearing and the motion to supplement the record. Olivo has supplemented his appendix with portions of the trial transcript. We now consider the two issues presented in his petition for rehearing with the benefit of the supplemented appendix.

I. *Subsequent bad act*

Olivo first challenges our conclusion that the district court did not abuse its discretion by admitting evidence of Olivo's subsequent arrest for transporting a large quantity of marijuana. He argues our ruling is contrary to the majority rule that "evidence of subsequent narcotics activity separated by more than a year from the charged offense is not relevant under the Federal Rules of Evidence Rule 404(b) to prove a defendant's knowledge or intent to commit the earlier crime." Appellant's br. for rehearing 1. To the extent Olivo argues there is an absolute rule regarding the number of months that can separate the charged offense and subsequent similar acts, we disagree. *See, e.g., United States v. Beasley,* 809 F.2d 1273, 1277 (7th Cir.1987) ("Questions about 'how long is too long' do not have uniform answers; the answers depend on the theory that makes the evidence admissible."). *Cf. United States v. Cuch,* 842 F.2d 1173, 1178 (10th Cir.1988)

---

* This is a supplemental opinion. The original opinion appears at 69 F.3d 1057 (10th Cir.1995).

(noting there is no absolute rule regarding the time that can separate a prior act from the charged offense). Regardless of whether 404(b) evidence is of a prior or subsequent act, its admissibility involves a case-specific inquiry that is within the district court's broad discretion. *See United States v. Bonnett,* 877 F.2d 1450, 1461 (10th Cir.1989) (reviewing the admission of subsequent bad acts and explaining that "[t]he closeness in time and the similarity in conduct [are] matters left to the trial court, and [its] decision will not be reversed absent a showing of abuse of discretion").

After reviewing the transcript as supplemented, we remain persuaded that, on the facts here, the court did not abuse its discretion. The subsequent act and the charged offense involved arrangements between Olivo and others to transport large quantities of marijuana. In the subsequent act, Olivo was the driver of the vehicle containing the marijuana; in the charged offense, he arranged for transportation of marijuana on his employer's trucks. Further, the manner in which the marijuana was packaged, although not identical, was similar. In the subsequent act, the marijuana was compressed into blocks, most of which were wrapped in silver foil and then rewrapped in cellophane and concealed in grocery boxes and a suitcase; in the charged offense, the marijuana was compressed, wrapped, dipped in tar, rewrapped, and secreted in grocery boxes. Appellant's suppl. append. 388–93. The court admitted the evidence to show intent, knowledge, and lack of accident or mistake.

However, even assuming the court erred by admitting the evidence, this error would not require the reversal of Olivo's conviction. "[E]rror which does not affect substantial rights does not require reversal." *United States v. Robinson,* 978 F.2d 1554, 1560 (10th Cir.1992), *cert. denied* 507 U.S. 1034, 113 S.Ct. 1855, 123 L.Ed.2d 478 (1993). *See also* 28 U.S.C. § 2111; Fed.R.Crim.P. 52(a). "A non-constitutional error is harmless unless it had a 'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such effect." *United States v. Rivera,* 900 F.2d 1462, 1469 (10th Cir.1990) (en banc) (quoting *Kotteakos v.*

*United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)). Based upon our review of the record on rehearing, we are persuaded that if the admission of evidence of the subsequent bad act was error, it was harmless error. *Cf. Robinson,* 978 F.2d at 1560 (holding that wrongfully admitted 404(b) evidence of prior arrests was harmless given the ample evidence in the record and the court's limiting instruction).

In reaching this conclusion, we note there was considerable evidence which linked Olivo to the conspiracy. For instance, Emilio Castillo, David Shanks, Roy Wales, and Lonnie Vaughan all testified about Olivo's role in the conspiracy, specifically that he transported marijuana across checkpoints with commercial trucks. Although Leo Agado testified about Scrivner's procedures and expressed his belief that it would be difficult for an employee to smuggle marijuana on a Scrivner truck, he acknowledged it was possible, and, indeed, he acknowledged the border patrol had found marijuana on a Scrivner truck on one occasion. Additionally, during the government's search of Olivo's farm, agents found scales, plastic wrap, duffel bags containing approximately 715 grams of marijuana residue, and a three-foot deep pit covered by a steel plate. We also note that at several points during the trial, the court cautioned the jury the subsequent act had been admitted for the specific, limited purpose of showing intent, knowledge, and lack of accident or mistake, and that the jury could consider it for no other purpose. *See, e.g.,* Appellant's suppl. append. 576; Appellant's append. 68. Finally, although the government referred to the subsequent act during its closing argument, each time it mentioned the act it explained the act was outside the conspiracy charged in the indictment and reminded the jury the court admitted the evidence only for specific, limited purposes. Appellee's suppl. append. 816, 826.

## II. *Impeachment*

Olivo next argues the trial court improperly restricted his impeachment of Lonnie Vaughan by refusing to admit into evidence 76 pounds of marijuana seized from Vaughan's home, and by prohibiting either

his counsel's questioning of Vaughan about his denial that criminal charges had been recently filed against Vaughan or his introducing extrinsic evidence regarding the charges. We previously declined to reach this issue because Olivo failed to provide the relevant portions from the trial transcript. Olivo has since sought and obtained leave to supplement the appendix. We now can address this issue and determine whether the district court abused its discretion by restricting Olivo's impeachment of Vaughan. *United States v. Drake*, 932 F.2d 861, 866 (10th Cir.1991). "We will only reverse a trial court's evidentiary ruling where we are left with a 'definite and firm conviction that the [trial] court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" *United States v. Young*, 952 F.2d 1252, 1259 (10th Cir.1991) (quoting *United States v. Bonnett*, 877 F.2d 1450, 1458 (10th Cir.1989)).

Vaughan testified in detail about Olivo's role in the marijuana smuggling conspiracy. Vaughan testified that during negotiations with Olivo to purchase $17,000 worth of marijuana, Olivo described his method for transporting marijuana past the inland border checkpoints. On cross-examination by Olivo's counsel, Vaughan acknowledged the police searched his truck and house on May 1, 1992, and found approximately 82 pounds of marijuana. Appellant's suppl. append. 453–55, 456. Olivo offered a list of the narcotics found during the search (exhibit 14) and pictures of the marijuana seized (exhibit 15). *Id.* at 454–56. The court did not admit either exhibit. *Id.* at 455–56. Armondo Olivo's counsel then cross-examined Vaughan. *Id.* at 464–68. After Vaughan stated he had not engaged in any criminal activity since February or March of 1992, Armondo Olivo's counsel inquired whether Vaughan had made a false claim for insurance in 1994, and Vaughan answered that he had not. *Id.* at 465. The government recalled Vaughan in its rebuttal. *Id.* at 473. On cross-examination, Olivo made a proffer of evidence regarding Vaughan's being charged in Tulsa, Oklahoma, with making a false claim for insurance. *Id.* at 478–79. The court asked if the fraud claim was the same claim Vaughan was asked about during the government's case-in-chief, and Olivo's counsel acknowl-

edged that it was. *Id.* at 479. The court refused to admit the evidence. *Id.* at 479–80.

Prior to offering exhibits 14 and 15, Olivo's counsel elicited testimony from Vaughan in which he acknowledged the police found drugs during the search of his residence. Specifically, Vaughan admitted the police found approximately 82 pounds of marijuana at his residence. At the bench conference on the government's objection, the court twice asked Olivo's counsel what this evidence added to his impeachment of Vaughan. *Id.* at 455. The court also voiced concerns about jury confusion. *See id.* at 455 (stating that "[t]he jury doesn't understand the overwhelming amounts of marijuana"). The court's decision to exclude the exhibits was within its discretion under Rule 403 as the exhibits were, at a minimum, cumulative. Exhibits 14 and 15 were cumulative in that they only served to prove what Vaughan had already admitted.

 Olivo next argues the court violated Federal Rule of Evidence 608(b) by preventing his counsel from inquiring about the false insurance claim. Rule 608(b) provides, in part, as follows:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, *in the discretion of the court*, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness.

(Emphasis added). Rule 608(b) is subject to Rule 403. *United States v. Atwell*, 766 F.2d 416, 420 (10th Cir.), *cert. denied* 474 U.S. 921, 106 S.Ct. 251, 88 L.Ed.2d 259 (1985).

 The court restricted Olivo's impeachment during the government's case-in-rebuttal. A trial court has broad discretion to admit or exclude rebuttal evidence. *United States v. McCollum*, 732 F.2d 1419, 1426 (9th Cir.), *cert. denied*, 469 U.S. 920, 105 S.Ct. 301, 83 L.Ed.2d 236 (1984).

 Although unclear, it seems Olivo's counsel sought both to introduce an affidavit of arrest regarding the Oklahoma criminal charge and to inquire about it. The

criminal charge is a collateral matter. *Cf. United States v. Walker*, 930 F.2d 789, 791 (10th Cir.1991) (explaining that a matter is collateral if it could not have been introduced in evidence for any purpose other than impeachment). The affidavit is extrinsic evidence of the charge. Because Vaughan's behavior was collateral, it was impermissible for Olivo to impeach with the affidavit. *Cf. United States v. Mateos–Sanchez*, 864 F.2d 232, 237 (1st Cir.1988) (noting that "Rule 608(b), which allows specific instances of conduct to be 'inquired into' on cross-examination to attack credibility, does not provide for the admission of physical evidence"); *United States v. Peterson*, 808 F.2d 969, 972–73 (2d Cir.1987) (holding admission of check defendant denied forging was error under Rule 608(b)); *United States v. Herzberg*, 558 F.2d 1219, 1222–23 (5th Cir.) (concluding that having witness read last few lines of an opinion affirming civil fraud judgment was error, although harmless), *cert. denied,* 434 U.S. 930, 98 S.Ct. 417, 54 L.Ed.2d 290 (1977); 28 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure: Evidence* § 6117, p. 89 (1993) (explaining that "the courts uniformly hold that documents and other real evidence of specific instances are excludable under Rule 608(b) as extrinsic evidence when the witness denies engaging in that conduct"). However, cross-examination questions alone are not extrinsic evidence. *Drake,* 932 F.2d at 867. Nevertheless, because Olivo's counsel failed to inquire about the charge during his thorough cross-examination of Vaughan in the government's case-in-chief, and because Armondo Olivo's counsel repeatedly asked Vaughan about the Oklahoma charge during the government's case-in-chief (Appellant's suppl. append. 564–67), we conclude the court was within its discretion to foreclose this repetitive line of questioning as cumulative. Additionally, assuming Olivo's counsel merely sought to contradict Vaughan's earlier statements that he had not engaged in criminal activity since 1992, the rebuttal examination was still cumulative.

AFFIRMED.