F I L E D
United States Court of Appeals
Tenth Circuit

JUN 28 2001

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

vs.

TIMOTHY BERNARD RIGGANS,

      Defendant - Appellant.

No. 00-3188

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 99-CR-20056-JWL)

---

Kim M. Berger (and Nancy Landis Caplinger, Assistant United States Attorney
and Jackie N. Williams, United States Attorney, on the brief), Topeka, Kansas,
for Plaintiff - Appellee.

J. Steven Schweiker, Overland Park, Kansas, for Defendant - Appellant.

---

Before **KELLY**, **BALDOCK**, and **LUCERO**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

     Mr. Riggans was convicted of bank larceny, in violation of 18 U.S.C. §
2113(b), and was sentenced to 120 months imprisonment and 3 years of
supervised release. On appeal, he argues that his conviction must be vacated

because the jury was not instructed on all of the elements of bank larceny.  In the alternative, he argues that he should be resentenced because bank larceny is not a crime of violence.  We have jurisdiction under 28 U.S.C. § 1291 and affirm.

Background

Wearing dark sunglasses and a baseball hat, Mr. Riggans entered a bank in Kansas City, Kansas [1] and approached a teller.  R. doc. 58, at 31-32.  He handed a note to the teller, which stated "I want $20,000 now."     Id. at 31.  Mr. Riggans told the teller to give him the money on the counter and in the teller's drawer.     Id. at 32.  The teller placed the money and a dye pack in a canvas bag and handed it to Mr. Riggans.    Id. at 34-36.  Mr. Riggans then told the teller to step back from her station and remove money from an adjacent station .     Id. at 36.  The teller did as instructed and placed the money in the same canvas bag.     Id. at 34-37.  The teller testified that she was afraid and thought Mr. Riggans would shoot her if she did not follow his instructions. The teller assumed Mr. Riggans had a weapon, although she never actually saw one.     Id. at 35-36, 48.

As Mr. Riggans exited the bank with the canvas bag, the teller yelled across the bank lobby to the security guard that she had just been robbed.     Id. at 38. The guard, with gun in hand, pursued Mr. Riggans into the parking lot.     Id.

---

[1]  The bank was FDIC insured.

- 2 -

at 39; R. doc. 59, at 188. The guard ordered Mr. Riggans to stop. R. doc. 59, at 188-89. Mr. Riggans replied, "F*** you," and " Go ahead and shoot." Id. The guard declined Mr. Riggans' invitation because "[t]here w[ere] too many people there that could have got hurt really bad . . . ." Id. at 189. Mr. Riggans threw the canvas bag in a red Chevrolet Cavalier, entered the vehicle, and drove away. Id. at 188-89. The guard followed in his pickup truck. Id. at 190.

Shortly thereafter, Mr. Riggans' scheme began to go up in smoke. A few blocks from the bank, a dye pack exploded and smoke began to pour from his Cavalier. Id. at 189-90. Unable to withstand the smoke, Mr. Riggans threw some of the money out the car window. Id. at 190.

Two hours later, Mr. Riggans was caught literally red handed. When FBI agents found Mr. Riggans in a bathroom in his mother's house, an agent noticed that Mr. Riggans' hands had been stained with red dye. Id. at 214-17. The agents discovered dye-stained money in the toilet and in a trash can, a dye pack in the toilet, and a towel that was also stained with red dye. Id. at 222-23. In other rooms in the house, agents found, among other things, a baseball hat, sunglasses, additional money stained with red dye, and the note presented to the teller. Id. at 224-26.

A red Chevrolet Cavalier was parked in the back yard and was covered with a blue tarp. R. doc. 58, at 84-85. The back of the passenger seat was

stained with red dye.    Id. at 92;  R. doc. 59, at 252-54.  The stains on the seat and towel were from the same dye used in the dye packs.  R. doc. 59, at 258.  The robbery was recorded by bank surveillance cameras, R. doc. 58, at 40-41, and a teller identified Mr. Riggans in a photo lineup.  R. doc. 59, at 164-65.

Mr. Riggans was charged with bank robbery, 18 U.S.C. § 2113(a), but convicted only of the lesser included offense of bank larceny,    id. § 2113(b).  R. doc. 43.

## Discussion

### Jury Instruction on Bank Larceny

Mr. Riggans requested that the jury be instructed on bank larceny under 18 U.S.C. § 2113(b) as a lesser included offense of bank robbery.  R. doc. 29.  The district court granted the request.  R. doc. 59, at 285-88.  Without objection from Mr. Riggans, the court instructed the jury that the elements of bank larceny were (1) the taking of property, money, or anything of value, (2) exceeding $1,000 in value, (3) in the care, custody, control, management or possession of a bank, (4) that was FDIC insured.  R. doc. 44 (instruction no. 11).

In Carter v. United States   , 530 U.S. 255, 259 (2000), decided during the pendency of Mr. Riggans' appeal, the Supreme Court held that bank larceny was not a lesser included offense of bank robbery.    The Court premised its conclusion

on the fact that bank larceny, § 2113(b), required three elements not required by bank robbery, § 2113(a): intent to steal or purloin, taking and carrying away of property, and a valuation of the property taken. Id. at 261. Relying upon Carter, Mr. Riggans argues that the bank larceny instruction omitted two of these elements (intent and carrying away), that this omission was fundamental error, and that his conviction should be vacated on this basis. We disagree.

Contrary to Mr. Riggans' contention, intent was not omitted from the jury instructions. In an instruction separate from the instruction on bank larceny, the jury was instructed that an element of bank larceny was the specific intent to do "an act which the law forbids, intending with evil motive or bad purpose either to disobey or to disregard the law . . . ." R. doc. 44 (instruction no. 13). Viewing the instructions as a whole, there is no doubt that the jury was fairly guided on the issue of intent. United States v. Magleby, 241 F.3d 1306, 1309-10 (10th Cir. 2001).

The instructions failed to instruct the jury on the element of carrying away, but Mr. Riggans failed to object at trial. Accordingly, we will vacate Mr. Riggans' conviction under Fed. R. Crim. P. 52(b) only if the district court committed plain error that we should notice. Johnson v. United States, 520 U.S. 461, 466-470 (1997); United States v. Schleibaum, 130 F.3d 947, 949 (10th Cir. 1997). We first ask if there is " (1) error, (2) that is plain, and (3) that affect[s]

substantial rights." Johnson, 520 U.S. at 467 (internal quotations and citations omitted; alteration in original). If the answer is yes, we exercise our discretion and notice the error only " if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Id. (citation and internal quotations omitted, alteration in original).

In light of Carter, it is undisputed that the district court committed plain error by failing to instruct the jury on the element of carrying away. However, assuming without deciding that the error affected Mr. Riggans' substantial rights, we do not exercise our discretion to notice the error because it did not seriously affect the "fairness, integrity or public reputation" of Mr. Riggans' trial. Id. at 469-70; Schleibaum, 130 F.3d at 949. As is readily apparent from our discussion of the facts, there was overwhelming evidence that Mr. Riggans carried the money away from bank. United States v. King, 521 F.2d 61, 63 (10th Cir. 1975), overruled on other grounds, United States v. Savaiano, 843 F.2d 1280, 1294 (10th Cir. 1988), does not require a contrary conclusion. The statement in King—that "regardless of the strength of the evidence, it is fundamental error to fail to instruct as to the necessary elements of the offense charged"—upon which Mr. Riggans relies was effectively overruled by our application of Johnson in Schleibaum, 130 F.3d at 949.

Bank Larceny as a Crime of Violence

Mr. Riggans was sentenced as a career offender under U.S. Sentencing Guidelines Manual § 4B1.1 (2000). A defendant is a career offender

> if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Id.[2] A crime of violence is

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that -- (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) . . . otherwise involves conduct that presents a serious potential risk of physical injury to another.

Id. § 4B1.2(a)(2). The district court found that Mr. Riggans had committed a crime of violence under the "otherwise" clause because Mr. Riggans' conduct presented a potential risk of physical injury to others.

Mr. Riggans contends that this finding was in error. Specifically, Mr. Riggans argues that bank larceny as a matter of law can never be a crime of violence because it lacks an element of force and intimidation and conduct may constitute bank larceny without presenting a serious potential risk to others. We review this claim de novo. United States v. Zamora, 222 F.3d 756, 763 (10th

---

[2] Mr. Riggans does not contend that the first and third requirements of § 4B1.1 were not satisfied.

Cir.), cert denied , 121 S.Ct. 641 (2000).

As the facts in this case illustrate, bank larceny may in fact present a serious potential risk of physical injury to others. Wisely, Mr. Riggans does not risk credibility by arguing to the contrary. Instead, Mr. Riggans contends that the district court was required to evaluate bank larceny only in the abstract and that the district court erred in considering the underlying facts of Mr. Riggans' conviction. While a more categorical approach is required in some circumstances, see e.g. United States v. Romero , 122 F.3d 1334, 1341 (10th Cir. 1997) (determining whether the defendant was convicted of a violent felony under the Armed Career Criminal Act), it is not here. In United States v. Walker , 930 F.2d 789, 794 (10th Cir. 1991) (internal quotations and citations omitted), superceded by rule as stated in Stinson v. United States , 508 U.S. 36 (1993), [3] we explained that the practical difficulties of conducting an "ad hoc mini-trial[]" of past convictions justified a more categorical approach to ascertaining the nature of such convictions. "However, these concerns do not apply when the court is examining the conduct of the defendant in the instant offense." Id. (citation omitted). We therefore held that "a conduct-specific inquiry is permissible when considering whether the instant offense is a 'crime of violence' . . . ." United

---

[3] While our holding in Walker was superceded by an amendment to the commentary to § 4B1.2, the proposition for which we cite Walker is still good law. United States v. Smith, 10 F.3d 724, 731 n.10 (10th Cir. 1993).

- 8 -

States v. Smith , 10 F.3d 724, 731 n.10 (10th Cir. 1993) (citing Walker , 930 F.2d at 793-95). Accordingly, the district court correctly considered the facts underlying Mr. Riggans' conviction.

The fact that the commentary to § 4B1.2 has been amended for clarity since Walker to include the parenthetical phrase "expressly charged" does not undermine the holding of Walker . The critical inquiry under § 4B1.2 has not changed: did the conduct for which the defendant was convicted constitute a crime of violence. Compare Walker , 930 F.2d at 793 (quoting 1989 version of commentary to § 4B1.2), with United States Sentencing Guidelines Manual § 4B1.2, cmt. n.1 (2000), and id. app. C, amend. 433 (1997). The Walker court did not confine the inquiry to the indictment; nor do we here. As the government observes, to limit the court's inquiry to the indictment "would lead to absurd results" where, as here, there is undisputed evidence that this criminal offense presented a serious risk of harm to others. Aplee. Br. at 26.

Ignoring Walker , Mr. Riggans argues that his conviction should be vacated under the Fourth Circuit's approach in United States v. Martin , 215 F.3d 470, 473 (4th Cir. 2000). Though similar in that the defendant was convicted of bank larceny after having been charged with bank robbery and sentenced as a career

offender, the similarity ends there, [4] and we decline to follow the analysis in

Martin. Moreover, we are also bound by Walker. In re Smith, 10 F.3d 723, 724 (10th Cir. 1993) ("We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court.") (citation omitted).

Affirmed.

All pending motions are denied.

---

[4] The defendant entered a bank, handed a teller a plastic bag, and said "I need you to fill this up please." United States v. Martin, 215 F.3d 470, 471 (4th Cir. 2000). The teller did not see a weapon, but claimed to be afraid. After the teller complied with the defendant's request, he left the bank without saying more. Id. at 471-72.

United States v. Riggans, 00-3188

**LUCERO**, Circuit Judge, concurring.

I concur in the result.