**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 27 1998**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

WILLIAM W. SCOTT,

Petitioner-Appellant,

v.

DONALD A. DORSEY, Warden,
Southern New Mexico Correctional
Facility; THOMAS UDALL,

Respondents-Appellees.

No. 96-2030
(D.C. No. C.V.-93-391-HB)
(D.N.M.)

ORDER AND JUDGMENT[*]

Before EBEL and HENRY, Circuit Judges, and DOWNES,[**] District Judge.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

---

[*]      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]      Honorable William F. Downes, District Judge, United States District Court
for the District of Wyoming, sitting by designation.

argument.  See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9.  The case

is therefore ordered submitted without oral argument.

Petitioner William Scott was charged by indictment with four sexual

offenses involving his granddaughter Melissa.  He was convicted by a jury in

New Mexico state court of one count of criminal sexual contact with a minor

and one count of criminal sexual penetration with great mental anguish alleged

to have occurred on or about August 6 and 7, 1988.  A mistrial because of jury

disagreement was declared with regard to the same charges alleged to have

occurred on August 22, 1988.  Petitioner was sentenced to eighteen years'

imprisonment, and his conviction was affirmed by the Court of Appeals of

New Mexico.  See State v. Scott, 828 P.2d 958, 966 (N.M. Ct. App. 1991).

The New Mexico Supreme Court quashed certiorari as improvidently granted.

See Scott v. State, 828 P.2d 957 (N.M. 1992).

Petitioner then filed a petition for writ of habeas corpus in the United

States District Court for the district of New Mexico under 28 U.S.C. § 2254

alleging that he was denied his right to due process because of trial errors and

ineffective assistance of counsel.  The district court adopted the recommendation

of the magistrate judge that petitioner's application be denied.[1]  Petitioner filed

---

[1]     The attention of petitioner's counsel is drawn to 10th Cir. R. 28.2 (d)
which requires an appellant's brief to include copies of "all pertinent written
(continued...)

his notice of appeal on February 5, 1996, and the district court granted

a certificate of probable cause to appeal on February 12, 1996.[2]

On appeal, petitioner argues that he was denied his due process right

to a fair trial when the district court allowed the complaining witness, his

granddaughter Melissa, to testify to her history of sexual abuse by her

grandfather, the petitioner. Specifically, petitioner argues that the evidence

was offered for no proper purpose and that its prejudicial effect outweighed

---

[1](...continued)
findings, conclusions, opinions or orders of a . . . magistrate judge."

[2] On April 24, 1996, while petitioner's appeal was pending, the
Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.
104-132, 110 Stat. 1214, was enacted into law. AEDPA amended 28 U.S.C.
§ 2253 to require a "certificate of appealability" issued "only if the applicant has
made a substantial showing of the denial of a constitutional right." Id.
§ 2253(c)(2). Because petitioner here filed his appeal and was granted a
certificate of probable cause before the amendment of § 2253, the district court's
grant of a certificate of probable cause under the version of § 2253 then in effect
was proper. Nickel v. Hannigan, 97 F.3d 403, 407 n.4 (10th Cir. 1996), cert.
denied, 117 S. Ct. 1112 (1997); see also United States v. Kunzman, 125 F.3d
1363, 1364 n.2 (10th Cir. 1997). Also during the pendency of this appeal, the
Prison Litigation Reform Act of 1995 (PLRA), Pub. L. No. 104-134, 110 Stat.
1321 (1996), amending the in forma pauperis statute, 28 U.S.C. § 1915, was
enacted on April 26, 1996. Because the filing fee requirements of PLRA do not
apply to habeas actions, see United States v. Simmonds, 111 F.3d 737, 743 (10th
Cir. 1997), the district court's grant of permission to proceed in forma pauperis
will be left undisturbed on appeal.

-3-

its probative value, all in violation of Fed. R. Evid. 404(b),[3] and 403 and the parallel state rules of evidence.[4] Petitioner further argues that the trial court erred in refusing to allow him to call witnesses to establish his contention that Melissa had brought prior unsubstantiated rape charges against a number of people in the past. Finally, petitioner argues that he was denied effective assistance of counsel and was the victim of cumulative error.

The merits of all of the issues raised in petitioner's habeas proceeding have previously been ruled on by the Court of Appeals of New Mexico. See Scott, 828 P.2d 958.[5] With respect to petitioner's evidentiary rulings, we note that

---

[3]     S.C.R.A. 1986, 11-404(b) of the Rules of Evidence states:

   Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

[4]     S.C.R.A. 1986, 11-403 of the Rules of Evidence provides:

   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[5]     Title I of the Antiterrorism and Effective Death Penalty Act of 1996, cited supra at n.1, significantly curtails the scope of collateral review of convictions and sentences. However, "[i]n Lindh v. Murphy, 117 S. Ct. 2059 (1997), the Supreme Court held Congress did not intend the new, more discretionary standards as reflected in the amended 28 U.S.C. § 2254(d) to apply to petitions

(continued...)

-4-

[i]n order for a federal court to grant habeas relief based on state court evidentiary rulings, the rulings must render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights. Thus, we will not disturb a state court's admission of evidence of prior crimes, wrongs or acts unless the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies defendant due process of law.

Hopkinson v. Shillinger, 866 F.2d 1185, 1197 (10th Cir. 1989)(quotation and citation omitted). A trial court's rulings on the admission or exclusion of evidence are reviewed for abuse of discretion. Cartier v. Jackson, 59 F.3d 1046, 1048 (10th Cir. 1995).

As noted above, petitioner argues that the trial court erred by admitting testimony from Melissa regarding past incidents of sexual abuse by petitioner. Melissa testified that when she was seven, petitioner began touching her breasts and vagina. She further testified that petitioner began raping her when she was eleven and had returned with her family after living for three years in Germany. She testified that petitioner told her not to tell anyone or he would hurt her and that she believed this threat. Melissa testified that the rapes and other sexual abuse continued until she finally confided to the nurse practitioner at the clinic in Questa, New Mexico, that her grandfather had been abusing her. Melissa did

_____

(...continued)
filed prior to the amendment's effective date, id. at 866; consequently, we apply the pre-amended version of 28 U.S.C. § 2254 to [petitioner's case]." Richmond v. Embry, 122 F.3d 866, 870 (10th Cir. 1997).

this, she testified, only because the nurse practitioner had surmised that Melissa was pregnant.

Prior to the presentation of this testimony, the state moved in a pretrial conference to admit this evidence, arguing that it was corroborative and admissible under state evidentiary law. The judge granted the motion reasoning that, because the theory of petitioner's defense was that he did not commit the crimes (not merely that the state would be unable to prove their commission), Melissa's credibility would be the central issue in the case and that evidence of the relationship Melissa had acquired over time with her grandfather would be relevant to her credibility. The judge noted that the evidence would not be offered to establish petitioner's character, as prohibited by Fed. R. Evid. 404(b) and its state equivalent, S.C.R.A. 11-404(B) of the Rules of Evidence, but was admissible to establish the length and extent of the relationship between Melissa and petitioner and as evidence of motive. The judge also ruled that the evidence would be relevant on the issue of petitioner's infliction of great mental anguish.

The Court of Appeals of New Mexico ruled that this testimony was properly admitted under state evidentiary law, citing State v. Minns, 454 P.2d 355 (N.M. Ct. App. 1969). On review of the denial of petitioner's habeas petition, however, we must decide whether the admission of Melissa's testimony regarding

prior sexual contact with defendant rendered his trial so fundamentally unfair as to deprive him of his federal constitutional right to due process.

The state evidentiary rules at issue in this case are in all relevant respects identical to their counterparts in the Federal Rules of Evidence. While we realize that the state rules governed this trial and that our only review is under the fundamental fairness test, we nevertheless refer to the federal rules and the case law interpreting them for guidance on the issue of fundamental fairness. With that understanding, we now turn to our analysis.

In United States v. Record, 873 F.2d 1363, 1374 (10th Cir. 1989), this court reevaluated the application of Rule 404(b) in light of the Supreme Court's then recent case of Huddleston v. United States, 485 U.S. 681 (1988). We began by noting this circuit's historically inclusive approach to Rule 404(b): "'[the rule] would allow admission of uncharged illegal acts unless the only purpose for their admission is to provide the criminal disposition of the defendant,'" Record, 873 F.2d at 1373 (quoting United States v. Nolan, 551 F.2d 266, 271 (10th Cir. 1977)), and observing that this inclusive approach had been vindicated by the Supreme Court in Huddleston, see Record, 873 F.2d at 1374. With regard to the role of Rule 404(b) in preventing unfair prejudice, the Court in Huddleston stated:

> the protection against such unfair prejudice emanates not from a
> requirement of a preliminary finding by the trial court, but rather
> from four other sources: first, from the requirement of Rule 404(b)
> that the evidence be offered for a proper purpose; second, from the

relevancy requirement of Rule 402--as enforced through Rule 104(b); third, from the assessment the trial court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice; and fourth, from Federal Rule of Evidence 105, which provides that the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

Huddleston, 485 U.S. at 691 (citation omitted).

We turn to the analysis of petitioner's 404(b) argument, utilizing principles gleaned from Huddleston. Evidence is offered for a proper purpose under Rule 404(b) if it "bears upon a relevant issue" and is "probative of a material issue other than character." Huddleston, 485 U.S. at 685-86. To be admissible under 404(b), evidence must also be relevant. See id. at 691. The trial court's decision to admit Melissa's testimony regarding petitioner's prior sexual contact with her satisfies the first two Huddleston requirements.

The theory of defense in this case was petitioner's claim of actual innocence. Because of this strategy, and because, as in most sex crimes cases, there were no other witnesses to the charged conduct, the central issue in the case was Melissa's credibility. Two other witnesses testified in this case both of whom offered evidence which, when tied to Melissa's testimony about a long history of sexual abuse by petitioner, helped to establish Melissa's credibility. First was the testimony of Dr. Barbara Dinsmore, a clinical psychologist who was treating Melissa, and who testified that, with her depression, hyperalertness, and

other pertinent psychological characteristics, Melissa fit the profile of a child who had been the victim of long-term sexual abuse. Next was Dr. Charles Anderson, a pediatrician who had examined and treated Melissa shortly after her revelation to the nurse practitioner, and who testified that Melissa suffered from high blood pressure, a peptic ulcer, headaches, fatigue, and was having trouble in school--all inter-related symptoms which, he testified, may also be related to stress. Additionally, Dr. Anderson found that Melissa's vaginal walls and vaginal opening were consistent with someone who had had repeated intercourse.

Melissa's testimony of long term abuse is consistent with and was bolstered by the psychological and medical evidence in this case. The 404(b) testimony she was allowed to give, therefore, was relevant to her credibility and to the state's ability to rebut any defense that Melissa was lying about the charged incidents.

The defense also attempted, both on cross-examination of Melissa and in its closing argument to the jury, to raise doubts about why Melissa had waited so long to tell anyone about the rapes. With this strategy a part of petitioner's case, evidence that petitioner threatened Melissa if she revealed the abuse and that Melissa believed the threats was relevant to explain the delay in reporting and to diffuse any inference of recent fabrication. See United States v. Powers, 59 F.3d 1460, 1464 (4th Cir. 1995)(holding evidence of defendant's prior violence against his family admissible to explain delay in reporting sexual abuse),

-9-

cert. denied, 116 S. Ct. 784 (1996). Thus, because the evidence of petitioner's prior wrongs was not offered to establish his bad character, but rather was offered to explain the context of the crimes and to rebut a charge of recent fabrication by Melissa, the evidence was both properly offered and relevant, thus satisfying the first two Huddleston requirements.

The third Huddleston factor, whether the prejudicial impact of the evidence outweighs its probative value, is satisfied by implication in this case. Here, the jury heard all of Melissa's testimony regarding her previous experiences with petitioner. They then considered whether he had committed the specific crimes charged against him on or about the weekend of August 6 and 7, 1988, and again on August 22, 1988. As mentioned above, the jury convicted petitioner of the charges alleged to have occurred on or about August 6 and 7, but could not agree about the charges on August 22. It is clear, therefore, that Melissa's testimony did not infect the proceedings with such prejudice that defendant was denied a fair trial. Melissa's testimony was relevant to the whole course of her relationship with petitioner; it was not solely aimed at the occurrences of August 6 and 7. This jury was amply able to resist any temptation to convict petitioner because 404(b) "other wrongs" evidence had convinced them he was a bad person generally and, therefore, probably committed the crimes with which he was charged. If that had been their analysis, they would have convicted

petitioner on all four counts.  Prejudice from Melissa's testimony did not sway this jury, because the bad acts evidence applied equally to both sets of charges.

The final Huddleston factor requires the trial court to give a limiting instruction on the proper purpose of 404(b) evidence, if requested.  Defense counsel did not request any limiting instruction in this case and none was given.  We have held that the failure to give a limiting instruction on 404(b) evidence as part of the charge to the jury is not error.  See Record, 873 F.2d at 1376.  In Record, however, a limiting instruction had been given at the time the evidence was offered.  See id. at 1373.  We do not find that distinction a bar, however, to our determination that the fourth Huddleston factor was complied with in this case.

The requirement for a limiting instruction in Huddleston is based on Fed. R. Evid. 105 which provides that a trial court must give a limiting instruction in certain circumstances "upon request."  Because defense counsel did not request the instruction, the trial court did not err in failing to give it.  Further, as discussed above, it is clear from the actions of this jury that they were not swayed to convict petitioner because of some improper use of Melissa's testimony.

At the least, we are not convinced that any failure to give a limiting instruction in this case resulted in a fundamentally unfair trial.[6]

Petitioner next argues that he was deprived of his Sixth Amendment right to confrontation when the district court refused to allow him to call witnesses regarding alleged prior false rape allegations made by Melissa, and when it further curtailed petitioner's questioning of Melissa on cross-examination of this matter. This is an issue we review de novo. See Tapia v. Tansy, 926 F.2d 1554, 1557 (10th Cir. 1991).

The judge in this case allowed the entire record from the Department of Human Services to be made available to both parties before trial. In that record were reports of prior allegations of sexual misconduct leveled by Melissa against various other people. The state moved at a pretrial conference to prevent the defense from inquiring into these allegations. The district court refused this

---

[6] Effective July 9, 1995, Fed. R. Evid. 414(a) provides that:

In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.

While the federal rule does not apply to this case, we cite it as persuasive on the question of the type of evidence federal courts believe to be within the permissible realm of fundamental fairness in child molestation cases.

motion, but also refused, in the face of strenuous objection from defense counsel, to allow petitioner to bring outside witnesses into court to question them about the truth or falsity of the past allegations. Instead, the court ruled that defense counsel could ask Melissa about the prior reports and attempt to impeach her credibility through them. Defense counsel prepared a list of questions which were reviewed by the attorneys for each side and by the judge. Those questions formed the framework for defense counsel's questioning of Melissa on this issue. Defense counsel was required to confer specifically with the judge during trial at a bench conference if he wished to ask questions other than those from the preapproved list.

Inquiry in a rape trial into prior rape charges made by the same accuser is allowable under New Mexico law if it is relevant and material, and if the prejudicial impact of the evidence does not outweigh its probative value. State v. Johnson, 692 P.2d 35, 42 (N.M. Ct. App. 1984)(overruled in part on other grounds by Manlove v. Sullivan, 775 P.2d 237 (N.M. 1989)); see Scott, 828 P.2d at 963 (stating that, in Manlove, New Mexico supreme court overruled Johnson in part). The prior complaints, however, must be "demonstrably false." Id. at 43. Petitioner argued to the district court the only way he could establish that the prior charges were "demonstrably false" was to call the accused persons as witnesses in the instant trial. The law does not permit this approach.

The trial court has broad discretion regarding the admissibility of evidence. See Cartier, 59 F.3d at 1048.

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness . . . concerning the witness' character for truthfulness or untruthfulness[. . .].

United States v. Olivo, 80 F.3d 1466, 1470 (10th Cir.)(quoting Fed. R. Evid. 608(b)), cert. denied, 117 S. Ct. 265 (1996). The conduct of the trial court regarding this matter complied in all respects with Rule 608(b). The judge specifically noted that both counsel would be allowed to question Melissa about her prior allegations, based on the records from the Department of Human Services, but that both sides "would be stuck with her answers." He declined to allow additional witnesses to be called regarding the details of any prior allegations. This procedure was completely appropriate under the circumstances. See United States v. Martinez, 76 F.3d 1145, 1150 (10th Cir. 1996).

Despite the bar on extrinsic evidence and the limits placed on cross-examination, the record of the trial proceedings reveals that defense counsel had ample opportunity to question Melissa regarding her past charges. See Olivo, 80 F.3d at 1470 (approving the court's restriction on impeachment and noting court's broad discretion to admit or exclude evidence). While Melissa denied

-14-

making one of the alleged accusations and was equivocal regarding another, she admitted that she had charged her grandmother and the grandmother's boyfriend with rape. Defense counsel reminded the jury of this testimony in his closing argument. Thus, the issue of Melissa's prior rape charges got an adequate airing in the presence of the jury. The trial court did not err in its handling of this evidence.

Finally, petitioner argues that he was deprived of effective assistance of counsel. Specifically, he asserts that counsel should have presented additional alibi witnesses, instead of relying solely on petitioner's wife of forty-seven years. We review this mixed question of law and fact de novo and "accept the factual findings of the district court unless they are clearly erroneous." Brewer v. Reynolds, 51 F.3d 1519, 1523 (10th Cir. 1995), cert. denied, 116 S. Ct. 936 (1996).

Claims of ineffective assistance of counsel are evaluated according to the two-prong test of Strickland v. Washington, 466 U.S. 688 (1984). Under that standard

> [f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

-15-

Id. at 687.

Petitioner maintains that he told his defense counsel about other potential witnesses who could have substantiated his claim of innocence, but that counsel chose, instead, to rely solely on Mrs. Scott.[7] The magistrate judge found this to be a strategic decision on the part of defense counsel. See R. Vol. I, tab 36. Petitioner has not advanced any evidence to convince us that this factual conclusion is clearly erroneous. As such, we will not disturb the conclusion of the district court because quarrels with strategic decisions of trial counsel will not support a finding of ineffectiveness. See Strickland, 466 U.S. at 690; Minner v. Kerby, 30 F.3d 1311, 1317 (10th Cir. 1994).

Alternatively, petitioner also fails to establish the prejudice necessary for his claim. After reviewing the twenty-three audio tapes that comprise the bulk of the record in this case, we cannot conclude that petitioner was prejudiced by the work of his defense counsel. There is no "probability that, but for counsel's purported unprofessional errors, the result of the proceeding would have been different." See Strickland, 466 U.S. at 694.

And finally, because we have found no error in petitioner's charges, there can be no cumulative error.

---

[7] Petitioner does not disclose the identity of these witnesses nor describe the evidence they could have provided.

-16-

The judgment of the United States District Court for the District of New Mexico is AFFIRMED.

Entered for the Court

William F. Downes
District Judge