**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Adan GARCIA, Defendant–Appellant.**

No. 90–1323.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 2, 1990.
Decided Feb. 6, 1991.

Deborah Janowski, (Law Student), Patrick Hansen, Asst. U.S. Atty., Office of the U.S. Atty., Hammond, Ind., for plaintiff-appellee.

Thomas M. Dawson, Leavenworth, Kan., Robert D. Rucker, CC, East Chicago, Ind., Michael Dick, Leavenworth, Kan., for defendant-appellant.

Before EASTERBROOK, MANION, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Adan Garcia contests the length of his 60 month sentence for drug dealing. First he argues that the base level of the offense was too high because the weight of the marijuana seized was incorrectly determined—that is, it should have been dried before being weighed. Second, Garcia claims that the loaded 9mm handgun found secreted in the cushions of a couch in his home where marijuana was seized did not justify an upward adjustment of his sentence.

Garcia's problems began when East Chicago police officers obtained and executed a search warrant for his house. During their search, the police found five, large green garbage bags containing bricks of marijuana: one bag was discovered in a first floor closet; two bags were located in the basement behind a water heater; and, two more bags were found in a basement closet. In addition, the police found plastic garbage bags containing marijuana residue in both the garage and garage attic. On the first floor of the home, the police also discovered a sawed-off shotgun in a bedroom closet and a loaded, 9mm automatic handgun in the cushions of a living-room couch. A large floor scale was also found in a basement closet.

The officers seized the guns, scale, and bags of marijuana discovered by the search and took them to police headquarters. There the marijuana was weighed, tagged, marked, and placed in the evidence storage area. While preparing to send the contraband to the Indiana State Police Laboratory for testing, an officer discovered mildew forming on the marijuana. At the suggestion of the Indiana State Police Laboratory, the officer placed the marijuana in boxes to dry. Before doing so, he took several photographs of the marijuana in its seized form with the weights of the bags indicated in the photographs.

After being indicted and tried for conspiracy to distribute marijuana in violation of 21 U.S.C. § 846 and possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), Garcia was found guilty on both counts. At the sentencing hearing, Garcia contested two issues. First, he objected to the weight of the marijuana used by the court for sentencing purposes. The district court found the weight of the marijuana to be 167.8 pounds, resulting in a base offense level of 22, see U.S.S.G. § 2D1.1(c)(11); Garcia maintained that the assigned weight was too high because some of the marijuana had been wet when it was weighed and, consequently, the base offense level should have been lower. Second, he objected to the probation officer's recommendation that the offense level be increased two levels for possession of a firearm. Nevertheless, the court increased the offense level by two for possession of a firearm under U.S.S.G. § 2D1.1(b)(1). The district court then sentenced Garcia to 60 months impris-

onment to be followed by three years of supervised release.

■ When reviewing a sentence imposed under the guidelines, a court of appeals "shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). The determination of the quantity of drugs involved in an offense for the purpose of sentencing is a factual determination. *United States v. Buggs*, 904 F.2d 1070, 1078 (7th Cir.1990). Garcia's sentence, therefore, must be upheld if the guidelines were properly applied to factual conclusions that were not clearly erroneous. *Id.; United States v. Vopravil*, 891 F.2d 155, 157 (7th Cir.1989).

■ On appeal, Garcia does not contend that the police inaccurately recorded the weight of the marijuana when seized. Instead, he maintains that the district court erred when it calculated the appropriate base level for his offense on the basis of the weight of damp marijuana. Under Garcia's "marketability" theory, the marijuana should have been dried (because it is usually sold in that condition) and then weighed. Counsel for Garcia does not, however, suggest how dry the marijuana must be in order to meet his optimum marketability standard. Nevertheless, Garcia maintains that the "dried" marijuana would have weighed less than 132 pounds, thus reducing the sentencing base level to 20 for his offense. *See* U.S.S.G. § 2D1.1(c)(12).

Despite Garcia's assertions to the contrary, the guidelines dictate a simple and straightforward approach to drug sentencing: Unless otherwise specified, the relevant quantifying factor to be considered is "the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1(c), n.* (Drug Quantity Table). Because marijuana is not "otherwise specified," the relevant weight is the entire weight of any mixture or substance containing a detectable amount of marijuana. Thus, the fundamental issue before us is whether the contraband seized from Garcia's home is a "mixture or substance" containing marijuana. If it is, its entire weight when seized, including any existing moisture content, is relevant for sentencing purposes.

There can be little doubt that water may constitute an integral part of a "mixture or substance" containing a detectable amount of marijuana. Indeed, water is a natural component of the growing marijuana plant and is arguably included in the statutory definition of the drug itself. Section 802(16) defines marijuana as "all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin," but specifically excludes only mature stalks of the marijuana plant and their derivative products from the definition. 21 U.S.C. § 802(16). Likewise, we have no doubt that for sentencing purposes, the "entire weight of the mixture or substance containing a detectable amount of the controlled substance" possessed by Garcia includes any mildew or moisture "impurities" attendant to the marijuana at the time of its seizure by the police. In reaching this conclusion our rationale is analogous to that of our decision in *United States v. Marshall*, 908 F.2d 1312, 1317 (7th Cir.) (en banc), *cert. granted*, —— U.S. ——, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990), *later proceeding Chapman v. United States*, —— U.S. ——, 111 S.Ct. 750, 112 L.Ed.2d 770 (1991), where we reasoned that a "detectable amount" of a drug in a mixture or substance is the opposite of a "pure" quantity of the drug and held that the combination of lysergic acid diethylamide (LSD) and its carrier paper was a "mixture or substance" to be used in calculating weight for sentencing purposes.

■ Of course, the moisture content of the marijuana may affect its quality and consequently the price a buyer will be willing to pay for it. *See, e.g., United States v. Walther*, 867 F.2d 1334, 1337 (11th Cir.) (defendants purchased wet marijuana, but negotiated a lower price to allow for the added weight of the moisture), *cert. denied*, —— U.S. ——, 110 S.Ct. 144, 107 L.Ed.2d 103 (1989). But while the quality

and condition of the marijuana are related to its marketability, it is solely the weight of the substance containing marijuana—not the nature of its marketability—that is the factor to be considered when determining the appropriate base offense level under the guidelines. This approach has the rational result of minimizing judicial concerns about when the marijuana was harvested, how (or if) it was dried, and how it was processed and stored. Moreover, there is no statutory or constitutional requirement that law enforcement officials standardize seized marijuana based on potency or purity, or convert it to a more marketable state by removing materials which constitute a part of the substance or mixture. For example, stalks of the marijuana plant, although excluded from the guideline definition of marijuana, can still constitute part of a "mixture or substance" containing a detectable amount of marijuana for the calculation of weight of the controlled substance seized. *United States v. Berry,* 876 F.2d 55, 56 (8th Cir.1989). These considerations make it clear that the district court correctly applied the guidelines when it concluded that the "entire weight of the ... controlled substance" includes the weight of the moisture attendant to the marijuana at the time of its seizure by the police.[1]

Garcia also argues on appeal that the district court erred when it adjusted his offense level upward by two levels under U.S.S.G. § 2D1.1(b)(1) for possession of a loaded, 9mm automatic pistol during the commission of the drug offenses.[2] As a quick review of the statutory provision and case law reveals, Garcia's contention is without merit.

■ Section 2D1.1(b)(1) of the guidelines provides: "If a dangerous weapon (including a firearm) was possessed during the commission of the offense, increase by 2 levels." As this court has previously held, section 2D1.1(b)(1) does not require that the defendant actually use the firearm, *United States v. Rush,* 890 F.2d 45, 52 (7th Cir. 1989), or that the government show a connection between the weapon and the offense. *United States v. Durrive,* 902 F.2d 1221, 1232 (7th Cir.1990). All that must be shown is that the weapon was possessed during the offense. *Id.*

■ Garcia does not deny he possessed the handgun; rather, relying on Application Note 3 to U.S.S.G. § 2D1.1, he argues that it was clearly improbable that the firearm was connected to his drug offense. In its pertinent part, Application Note 3 provides that:

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

Courts addressing the proper application of this Note have generally limited its use to cases involving facts nearly identical to those of the hypothetical. For example, in a case closely analogous to Garcia's, *United States v. Franklin,* 896 F.2d 1063, 1065–66 (7th Cir.1990), we affirmed a section 2D1.1(b)(1) two-level enhancement when three loaded handguns were found in the same house as cocaine and various equipment used for its manufacture and distribution. In *Durrive,* this court also upheld a § 2D1.1(b)(1) sentence enhancement when the police discovered a .357 revolver in a closet of the defendant's apartment which had been used as the drug conspiracy's base of operations, even though no drugs were found in the apartment. *Durrive,* at 1230–32. Similarly, in *United States v. Green,* 889 F.2d 187 (8th

---

1. Garcia's "marketability" interpretation of § 2D1.1 is also rendered suspect by evidence in the record which supports the conclusion that Garcia had distributed damp, yet marketable, marijuana from his home the night before the seizure.

2. While the record does not clearly reflect why the district court did not base its § 2D1.1(b)(1) sentence enhancement on Garcia's possession of the sawed-off shotgun, the record suggests that the shotgun was rusted and inoperable.

Cir.1989), the court held that the Application Note 3 exception did not apply because the firearm was not a hunting weapon and was kept at a residence which was the principal base of the drug operation. Consequently, it upheld the defendant's sentence enhancement for possession of an unloaded, single shot .22 pistol. *Id.* at 188–89; *see also United States v. Holland*, 884 F.2d 354, 358–59 (8th Cir.) (enhancement justified when two handguns found in defendant's home where drugs seized), *cert. denied*, —— U.S. ——, 110 S.Ct. 552, 107 L.Ed.2d 549 (1989); *United States v. McGhee*, 882 F.2d 1095, 1096 (6th Cir.1989) (guns concealed in hidden compartments, although not readily accessible to defendant, sufficient to justify enhancement for possession during offense); *but see United States v. Rodriguez–Nuez*, 919 F.2d 461, 466–467 (7th Cir.1990) (enhancement not justified when distance of several miles separated the firearms found at defendant's residence and the location of the drugs).

In light of the case law interpreting U.S. S.G. § 2D1.1(b)(1) and Application Note 3, the facts of this case clearly support an upward adjustment in the offense level. Like the firearm in *Green*, the weapon involved here, a 9mm automatic pistol, is a handgun typically used for personal protection. The fact that the pistol was loaded further distinguishes Garcia's case from the hypothetical hunting weapon in Application Note 3. Moreover, the pistol was found in the cushions of a living room couch, making it secretly, but readily, accessible to Garcia. Finally, as in *Durrive*, the fact that the drugs were stored in, and delivered from, Garcia's house makes it more probable that the gun was connected to the drug offenses. The court's finding that an enhancement under § 2D1.1(b)(1) was warranted is, therefore, not clearly erroneous.

For the foregoing reasons, the decision of the district court in imposing sentence is AFFIRMED.