**UNITED STATES of America,**
**Plaintiff,**

v.

**Michael L. LIPP, Defendant.**

No. Civ. 98–3108–SAC.
No. Crim. 92–40042–07–SAC.

United States District Court,
D. Kansas.

May 18, 1999.

Melanie J. Branham, Olathe, KS, Thomas D. Haney, Fairchild, Haney & Buck, P.A., Topeka, KS, Dennis W. Moore, Lenexa, KS, James P. Moran, Office of Federal Public Defender, Denver, CO, for Defendant.

Jonathan B. Phelps, Topeka, KS, pro se.

David J. Phillips, Office of Public Defender, Topeka, KS, pro se.

Edith Wacker, Dublin, CA, pro se.

John lee Wacker, Oklahoma City, OK, pro se.

Lewis Theodor Wacker, Lincoln, KS, pro se.

Perl Glen Van Pelt, FCI—GREENVILLE, Greenville, IL, for defendant represented by Van Pelt pro se.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

On July 9, 1993, the jury found the defendant, Michael Lipp, guilty of counts 1 (conspiracy to possess marijuana with intent to distribute), 2 (use of a firearm during and in relation to a drug trafficking crime), 3 (possession of a firearm by a convicted felon), 5 (possession with intent to distribute marijuana), 6 (possession with intent to distribute marijuana), 7 (use of a firearm during and in relation to a drug trafficking crime),[1] 10 (possession of a firearm by a convicted felon) and 11 (possession with intent to distribute marijuana) of the superseding indictment. Lipp was found not guilty on counts 4, 12 and 15. All of Lipp's codefendant's were also convicted of conspiracy to distribute marijuana and other crimes charged in the superseding indictment. *See United States v. Van Pelt,* No. 92–40042–01, 03–07–SAC, 1993 WL 360329 (D.Kan. August 17, 1993) (denying defendants' motions for acquittal and/or new trial). On December 21, 1993, the defendant was sentenced to a primary term of incarceration of 180 months. At trial and through sentencing, Lipp was represented by retained counsel John Ambrosio.

On December 26, 1995, the Tenth Circuit issued its opinion which affirmed all of Lipp's convictions except Count 2, the Count which charged a violation of 18 U.S.C. § 924(c). *See United States v. Wacker,* 72 F.3d 1453 (10th Cir.1995), *cert. denied,* 519 U.S. 848, 117 S.Ct. 136, 136 L.Ed.2d 84 (1996). The § 924(c) conviction was overturned in light of the Supreme Court's decision in *Bailey. Id.* at 1463–65. On appeal, Lipp was represented by retained counsel Susan Hunt. Lipp's case was remanded to this court for resentencing.

After remand of Lipp's case (and his codefendant's related cases), this court entered a memorandum and order in which it concluded that upon vacation of the § 924(c) conviction, this court could, in its discretion, enhance each defendant's sentence pursuant to U.S.S.G. § 2D1.1(b)(1) (possession of a dangerous weapon). *See United States v. Van Pelt,* 938 F.Supp. 697 (D.Kan.1996), *aff'd,* 131 F.3d 153, 1997 WL 716136 (10th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1333, 140 L.Ed.2d 493 (1998). In Lipp's case, the enhancement under § 2D1.1(b)(1) resulted in a guideline range of 120–121 months. In the exercise of its discretion, this court chose not to enhance the defendant's sentence. *See Van Pelt,* 938 F.Supp. at 707 n. 1 ("Although the guideline range for [Lipp's] imprisonment was 78–97 months, the court was required to impose the mandatory

---

1. Prior to sentencing, the court vacate Lipp's conviction on Count 7 based upon double jeopardy principles. *United States v. Lipp,* 1993 WL 544572 (D.Kan. Dec. 16, 1993) (memorandum and order providing parties with notice that it intended to vacate one of two 924(c)(1) counts based upon double jeopardy).

minimum sentence of 120 months pursuant to *U.S.S.G.* § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."); *see United States v. Richards,* 67 F.3d 1531, 1537 (10th Cir.1995) [*vacated on other grounds,* 87 F.3d 1152 (10th Cir.), *cert. dismissed,* 519 U.S. 1003, 117 S.Ct. 540, 136 L.Ed.2d 396 (1996) ]. Because of the negligible increase in the guideline range, and because the court would nevertheless impose a sentence of 120 months, the court does not intend to enhance Lipp's sentence pursuance to § 2D1.1(b)(1).". On April 2, 1997, this court imposed a primary term of incarceration of 120 months. *Lipp did not appeal that sentence.*

This case comes before the court upon the Lipp's "Motion to Vacate, Set Aside or Correct Sentence By a Person in Federal Custody" (Dk.813). Lipp's motion was prepared by retained counsel Susan Hunt, the same attorney who represented him on appeal and before this court after remand. Lipp's motion first claims that his first attorney, John Ambrosio, was ineffective in failing to challenge the presentence investigation report's (PSI's) calculation of the weight of the marijuana attributed to him. Second, Lipp contends that the introduction of the nature of his previous convictions (1972 conviction for possession with the intent to distribute marijuana/1976 conviction for two counts of murder) when he offered to stipulate to the fact of his prior felony convictions violated his constitutional rights to due process and a fair trial. Third, Lipp contends that he was denied effective assistance of counsel when his trial counsel failed to investigate the government's key witness, Carla Wacker, and to present key impeachment evidence concerning her lack of credibility. Finally, Lipp contends that the court's introduction of "front sheets" authored by Edith Wacker violated his right to a fair trial.

After reviewing the defendant's motion, the court instructed the government to file a response. The government opposes the defendant's motion. First, the government contends that the PSI properly calculated the weight of the marijuana attributable to this defendant under Tenth Circuit precedent (*citing United States v. Pinedo– Montoya,* 966 F.2d 591 (10th Cir. 1992) (adopting the holding articulated in *United States v. Garcia,* 925 F.2d 170 (7th Cir.1991))). Second, the government contends the defendant's arguments regarding the introduction of facts relating to his previous convictions presents an issue previously decided and rejected by the Tenth Circuit. Third, the government contends that Lipp's trial counsel was not ineffective in failing to investigate the government's witness, Carla Wacker. Finally, the government contends that the Tenth Circuit has fully addressed the issue of the "front sheets" and that this collateral challenge is therefore barred.

The defendant filed a reply, noting that the 1993 amendments to Application Note 1 of *U.S.S.G.* § 2D1.1 of the sentencing guidelines essentially overruled the Tenth Circuit's precedent in *Pinedo–Montoya* and the Seventh Circuit's analysis in *Garcia.* According to the defendant, based upon the weights he could prove at an evidentiary hearing, only 93.85 kilograms of marijuana are attributable to him. Therefore the mandatory minimum sentence would not apply to him (less than 100 kilograms of marijuana) and the court could sentence Lipp to a period of incarceration anywhere within the newly calculated guideline range of 63 to 78 months (base offense level of 24/Criminal History Category of III = guideline range of 63 to 78 months).

After reviewing the parties' briefs, the court set an evidentiary hearing to consider evidence pertaining to the amount of marijuana properly attributable to Lipp. On May 11, 1999, the court conducted that hearing. At the hearing, James Chappas, the court-appointed attorney who repre-

sented James Cooley, a co-defendant of Lipp's, testified that immediately prior to his client's sentencing in November of 1993 he and Special Agent Halverson of the Kansas Bureau of Investigation (KBI) reweighed the marijuana described in Counts 5, 6 and 11. Chappas testified that on November 22, 1993, that marijuana weighed a total of 93.85 kilograms. Special Agent Halverson also testified at the hearing. Special Agent Halverson agreed that the weight of the marijuana had decreased since it was originally seized, but attributed the loss of weight to evaporation, "shake" and consumption of a portion of the marijuana by rodents.

### Legal Standards: 2255 Motions

"Section 2255 motions are not available to test the legality of matters which should have been raised on direct appeal." *United States v. Warner*, 23 F.3d 287, 291 (10th Cir.1994) (citation omitted). "Consequently, a defendant may not raise claims that were not presented on direct appeal unless he can show cause and prejudice resulting from the error." *United States v. Cook*, 45 F.3d 388, 392 (10th Cir.1995) (citing *Warner*). "A defendant may establish cause for his procedural default by showing that he received ineffective assistance of counsel in violation of the Sixth Amendment." *Cook*, 45 F.3d at 392 (citing *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). Conversely, absent special circumstances, "[a] § 2255 may not relitigate issues that were raised and considered on direct appeal." *United States v. Perez*, 129 F.3d 255 (2d Cir.1997), *cert. denied*, —— U.S. ——, 119 S.Ct. 384, 142 L.Ed.2d 318 (1998); *United States v. Prichard*, 875 F.2d 789, 791 (10th Cir.1989) (absent an intervening change in the law, issues disposed of on direct appeal will not be considered on a collateral attack by a § 2255 motion); *Barton v. United States*, 791 F.2d 265, 267 (2d Cir.1986) (absent special circumstances a § 2255 is not an avenue for relitigating questions raised and considered both by the trial court and on appeal).

### Ineffective Assistance of Counsel

The Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." "An indigent defendant in a criminal trial has the constitutional right to the assistance of counsel." *Baker v. Kaiser*, 929 F.2d 1495, 1498 (10th Cir.1991) (citing *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)). "The right to counsel also extends to a defendant's first appeal as of right." *Baker*, 929 F.2d at 1498 (citing *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963)).

In criminal prosecutions, "the right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970); *McGee v. Crist*, 739 F.2d 505, 506 (10th Cir.1984). The Sixth Amendment guarantee of effective assistance of counsel "demands that defense counsel exercise the skill, judgment and diligence of a reasonably competent defense attorney." *Dyer v. Crisp*, 613 F.2d 275, 278 (10th Cir.) (en banc), *cert. denied*, 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980).

*United States v. Ruth*, 768 F.Supp. 1428, 1430 (D.Kan.1991), *aff'd*, 963 F.2d 383, 1992 WL 102514 (10th Cir.1992).

To establish a claim for ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was constitutionally deficient, and (2) counsel's deficient performance was prejudicial. *Strickland [v. Washington]*, 466 U.S. [668] at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 [(1984)]. Counsel's performance is deficient if the representation "falls below an objective standard of reasonableness." *Id.* at 690[, 104 S.Ct. 2052]. Prejudice is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceed-

ing would have been different." *Id.* at 694[, 104 S.Ct. 2052].

*Cook,* 45 F.3d at 392.

■ "There is a strong presumption that counsel provided effective assistance, and a section 2255 defendant has the burden of proof to overcome that presumption." *United States v. Williams,* 948 F.Supp. 956, 960 (D.Kan.1996) (citations omitted), *aff'd,* 118 F.3d 717 (10th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 636, 139 L.Ed.2d 615 (1997).

### Weight of Marijuana Attributable to Lipp

As mentioned above, Lipp was convicted of one count of conspiracy to possess with the intent to distribute marijuana and three substantive counts of possession with the intent to distribute marijuana. Count 1 of the indictment charged the defendants, including Lipp, with membership in a conspiracy to possess with the intent to distribute 2,000 pounds of marijuana. Count 5 charged possession with intent to distribute 135 pounds of marijuana. Count 11 charged possession with the intent to distribute 125 pounds of marijuana. Combining 135 pounds and 125 pounds = 260 pounds, which converts to 117.9 kilograms. Count 6 charged possession with the intent to distribute 34 marijuana plants, a number of plants that converted to 3.4 kilograms of marijuana. Combining these three counts resulted in a total weight of 121.3 kilograms (117.9 + 3.4 = 121.3).

Given his comparatively limited involvement in the conspiracy, the PSI writer deemed it improper to attribute the full 2,000 pounds to Lipp. Instead, the PSI writer recommended attributing only 121.3 kilograms of marijuana, the sum of the amount of marijuana charged in counts 5, 6, and 11 to Lipp. The government filed an objection to the PSI, arguing that the full 2,000 pounds should be attributed to Lipp. At sentencing this court overruled the government's objection, finding that 121 kilograms were properly attributable to Lipp.

Lipp's guideline range was therefore 78 to 97 months.

Lipp's guideline range was trumped by the mandatory minimum set forth in § 841. Because over 100 kilograms of marijuana were attributed to Lipp, he was subject to the mandatory minimum penalties set forth in 21 U.S.C. § 841(b)(1)(B). Based upon the sentencing information filed by the government pursuant to 21 U.S.C. § 851, Lipp's mandatory minimum penalty for possession with the intent to distribute marijuana doubled from five to ten years. *See* 21 U.S.C. § 841. Consequently, Lipp received a sentence of 120 months for his conviction of conspiracy. According to the BOP, Lipp has now served 81 months of his 120 month sentence.

### Wet Marijuana

In 1992 the Tenth Circuit held that "[t]he district court properly considered the moisture content in the calculation of the weight of the marijuana for sentencing purposes." *Pinedo–Montoya,* 966 F.2d at 596. In reaching that decision, the Tenth Circuit relied on the Seventh Circuit's analysis in *United States v. Garcia,* 925 F.2d 170 (7th Cir.1991). In *Garcia,* the Seventh Circuit considered the issue of whether to include the moisture content in determining the weight of the marijuana for sentencing purposes and rejected the defendant's argument. In the court's view, the guidelines dictated a simple and straightforward approach to drug sentencing: Unless otherwise specified, the weight to be considered is "the entire weight of any mixture or substance containing a detectable amount of (marijuana)". *Id.* at 172. Because marijuana was not otherwise specified, the entire weight, including any existing moisture content, is relevant for sentencing purposes. *Id.* Additionally, the court believed water is arguably included within the statutory definition of marijuana. 21 U.S.C. § 802(16). While the court acknowledged that the moisture content of the marijuana may affect its

marketability, the court noted its interpretation had the result of minimizing judicial concerns about when the marijuana was harvested and how it was dried, processed and stored. *Id.* at 172–73.

We believe the reasons articulated by the *Garcia* court have force and should guide our decision. Additionally, punishing an offender based on the weight of the damp marijuana seized from his car is consistent with the intention of Congress. Congress intended to punish drug traffickers based on the total quantity of what is distributed, rather than the pure drug involved. *Chapman v. United States,* 498 U.S. 1045, 111 S.Ct. 750, 112 L.Ed.2d 770 (1991). It did not intend to punish persons who trafficked in smaller amounts of drugs less severely, but rather to punish drug traffickers according to the weight of drugs "in whatever form they were found." *Id.*

In this case, Pinedo, not the government, chose the method of transporting the marijuana in a deliberate effort to conceal his criminal activity. There was no evidence that the marijuana would have been marketed in any condition other than as it was seized. In our view, omission of the phrase "mixture or substance" in § 841(b)(1)(D) does not signify a congressional intent to require the sentence to be based on the dry weight of the marijuana.

*Id.* at 595–69.

Effective November 1, 1993, Amendment 484 changed Application Note 1 to include the following language:

"*Mixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used.* Examples of such materials include the fiberglass in a cocaine/fiberglass bonded suitcase, beeswax in a cocaine/beeswax statue, and waste water from an illicit laboratory used to manufacture a controlled substance. If such material cannot readily be separated from the mixture or substance that appropriately is counted in the Drug Quantity Table, the court may use any reasonable method to approximate the weight of the mixture or substance to be counted."

(Emphasis added). In pertinent part, the Commentary to this amendment states:

[T]his amendment clarifies the treatment of marihuana that has a moisture content sufficient to render it unusable without drying (e.g., a bale of marihuana left in the rain or recently harvested marihuana that has not had time to dry). In such cases, using the weight of the wet marihuana can increase the offense level for a factor that bears no relationship to the scale of the offense or the marketable form of the marihuana. Prior to the effective date of the 1993 amendments, two circuits had approved weighing wet marihuana despite the fact that the marihuana was not in a usable form. *United States v. Pinedo–Montoya,* 966 F.2d 591 (10th Cir.1992); *United States v. Garcia,* 925 F.2d 170 (7th Cir. 1991). Although Application Note 1 in the Commentary to § 2D1.1, effective November 1, 1993 (pertaining to unusable parts of a mixture or substance) should produce the appropriate result because marihuana must be dried before being used, this type of case is sufficiently distinct to warrant a specific reference in this application note to ensure correct application of the guideline.

Amendment 484. Even if he had not been resentenced subsequent to the 1993 amendment, Lipp would be entitled to the benefit of Amendment 484. *See United States v. Deninno,* 29 F.3d 572, 579 (10th Cir.1994), *cert. denied,* 513 U.S. 1158, 115 S.Ct. 1117, 130 L.Ed.2d 1081 (1995); *United States v. Tannehill,* 131 F.3d 153, 1997 WL 741163 (10th Cir.1997) (Table) ("Tannehill is correct that Amendment 484 was enacted subsequent to his sentencing and can be applied retroactively.").

In 1995 the Commentary following *U.S.S.G.* § 2D1.1 was substantially amended. Only one paragraph of the amendment to the Commentary is relevant to

Lipp's sentence. In pertinent part, Application Note 1 now includes the following additional paragraph:

> Similarly, in the case of marihuana having a moisture content that renders the marihuana unsuitable for consumption without drying (this might occur, for example, with a bale of rain-soaked marihuana or freshly harvested marihuana that had not been dried), an approximation of the weight of the marihuana without such excess moisture content is to be used.

Amendment 518. Unlike Amendment 484, Amendment 518 was not made retroactive. *See United States v. Carter*, 110 F.3d 759, 760 (11th Cir.1997). However, because Amendment 484 actually requires the sentencing court to approximate the dry weight of marijuana that is too wet to consume, the Eleventh Circuit has treated the above-quoted portion of Amendment 518 as a "clarification" of Amendment 484, and held that the defendant should nevertheless be able to use Amendment 518 in challenging the calculation of the weight of marijuana attributable to him. *See Carter*, 110 F.3d at 761–62 (on motion for reduction of sentence, district court should determine weight of water in marijuana too wet to consume); *United States v. Smith*, 51 F.3d 980 (11th Cir.1995).

 Frankly, this entire discussion of the "retroactivity" of the amendments to Application Note 1 is largely academic because Lipp was resentenced in 1997 and therefore he was undoubtedly entitled to the benefit of both the 1993 and 1995 amendments to Application Note 1. *See United States v. Maples*, 95 F.3d 35, 37 (10th Cir.1996) ("Absent an ex post facto problem, the district court is required to apply the Guideline provisions in effect at the time of sentencing ...") (*citing* 18 U.S.C. § 3553(a)(4)(A) and *United States v. Kissick*, 69 F.3d 1048, 1052 (10th Cir.

1995) and *United States v. Richards*, 5 F.3d 1369, 1372 n. 1 (10th Cir.1993)), *cert. denied*, 519 U.S. 1070, 117 S.Ct. 716, 136 L.Ed.2d 635 (1997); *United States v. Orr*, 68 F.3d 1247, 1252 (10th Cir.1995) ("The sentencing court generally must apply the sentencing guidelines in effect on the date of sentencing rather than those in effect at the time of the offense. The Ex Post Facto Clause, however, prohibits retroactive application of an amended guideline provision if the amendment 'disadvantages the defendant.' ") (*quoting United States v. Gerber*, 24 F.3d 93, 95–96 (10th Cir.1994) (*quoting United States v. Saucedo*, 950 F.2d 1508, 1513 (10th Cir.1991)), *cert. denied*, 516 U.S. 1064, 116 S.Ct. 747, 133 L.Ed.2d 695 (1996).[2]

### General Rules for Calculating the Amount of Contraband Attributable to a Defendant

 "The rules for calculating ... drug quantities in conspiracy cases are well established" in the Tenth Circuit. *United States v. Ivy*, 83 F.3d 1266, 1289 (10th Cir.), *cert. denied*, 519 U.S. 901, 117 S.Ct. 253, 136 L.Ed.2d 180 (1996). A defendant " 'is accountable for all quantities of contraband with which he was directly involved.' " *United States v. Lockhart*, 37 F.3d 1451, 1454 (10th Cir.1994) (quoting U.S.S.G. § 1B1.3, comment. (n. 2)).

For purposes of the base offense level calculation under § 2D1.1, a defendant is responsible for "all quantities of contraband with which he was directly involved and ... all reasonably foreseeable quantities ... that were within the scope of the criminal activity that he jointly undertook." *U.S.S.G.* § 1B1.3 application note 2; *see also United States v. Ortiz*, 993 F.2d 204, 207 (10th Cir.1993). "The government has the burden of proving the quantity of drugs

---

2. Lipp's § 2255 motion points the finger of ineffective assistance of counsel only at John Ambrosio. The court simply notes that his current counsel is the same counsel who represented him on appeal and before this court after the Tenth Circuit's remand. Lipp's current counsel did not raise this challenge to the weight of the marijuana either on appeal or to this court before the defendant was resentenced in 1997.

for sentencing purposes by a preponderance of the evidence." *Id.* The district court may estimate the quantity of drugs involved provided the information underlying the estimate possesses " 'sufficient indicia of reliability to support its probable accuracy.' " *Id.* (*quoting U.S.S.G.* § 6A1.3(a)).

*United States v. Hooks,* 65 F.3d 850, 854 (10th Cir.1995).

■ Under the sentencing guidelines, a defendant can be held accountable for uncharged and unconvicted conduct:

After ten years of living under the Sentencing Guidelines, it is uncontested today that uncharged, unconvicted conduct may be considered by a district court in calculating a sentence. *See* United States Sentencing Commission, Guidelines Manual, § 1B1.3, comment. (backg'd) (Nov.1991) ("Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range."); *see also United States v. Watts,* 519 U.S. 148, 157, 117 S.Ct. 633, 638, 136 L.Ed.2d 554 (1997) (per curiam) (holding that even conduct for which the defendant is acquitted may be considered for sentencing purposes). It is well-settled in this circuit that a sentencing court may look beyond the offense of conviction and "may consider quantities of drugs not alleged in calculating a defendant's base offense level, provided the drugs were part of the same course of conduct or common scheme or plan as the offense of conviction." *United States v. Roederer,* 11 F.3d 973, 978 (10th Cir. 1993).

*United States v. Moore,* 130 F.3d 1414, 1416 (10th Cir.1997).

■ When the defendant is a member of a drug conspiracy, "[t]he drug quantities attributable to a defendant are established not by looking at the drugs involved in the conspiracy as a whole, but rather by looking at the quantity of drugs the defendant reasonably foresaw or which fell within the scope of the defendant's agreement with the conspirators." *United States v. Warner,* 131 F.3d 153, 1997 WL 731785, *4 (10th Cir.1997) (Table).

To recap, in determining the amount of marijuana attributable to a member of a conspiracy, the court is not limited to the amount charged in the substantive counts of conviction. Moreover, the jury's verdict on any of the substantive drug charges did not limit the amount of marijuana this court could have attributed to Lipp. If satisfied by a preponderance of the evidence that the object the conspiracy was foreseeable and within the scope the criminal enterprise he undertook, the court could have attributed the entire 2,000 pounds of marijuana to Lipp.

In this case the court deemed it appropriate to attribute only 121.3 kilograms to Lipp—the amount charged in the substantive counts of conviction. Because the court used the actual weight of the marijuana charged in the substantive counts of conviction to determine the amount of marijuana properly attributable to Lipp, the court now deems it appropriate to apply the 1993 and 1995 amendments to Application Note 1 in determining the amount of marijuana attributable to him.

### Mandatory Minimum Sentences

■ During the evidentiary hearing, it appeared to the court that there existed some confusion concerning the operation of the statutory mandatory minimum penalties in 21 U.S.C. § 841. The following discussion from the Tenth Circuit explains the manner in which the mandatory minimum prescribed in 21 U.S.C. § 841 operate:

Our cases make clear not only that the mandatory minima prescribed in 21 U.S.C. § 841(b)(1)(A) are not substantive offenses in themselves, but further that "[t]he quantity of the marijuana possessed by [the] defendant is not an element of the substantive offense as defined in 21 U.S.C. § 841(a)." *United States v. Cox,* 934 F.2d 1114, 1121 (10th

Cir.1991); *see also United States v. Underwood,* 982 F.2d 426, 429–30 (10th Cir. 1992) (because drug quantity is not an element of 21 U.S.C. § 841(a), defendant is not entitled to have the issue decided by a jury), *cert. denied,* 509 U.S. 925, 113 S.Ct. 3043, 125 L.Ed.2d 729 (1993). We have also held it is unnecessary for the government to allege drug quantity in the indictment, and that even when the government does so, the quantity alleged "does not dictate the mandatory minimum that the court is required to impose" under 21 U.S.C. § 841(b). *United States v. Reyes,* 40 F.3d 1148, 1151 (10th Cir.1994); *see also Underwood,* 982 F.2d at 429 (district court may rely on drug quantities not alleged in the indictment in calculating base offense level under U.S.S.G. § 2D1.1(c)). Because drug quantity is not an element of the offense, "the government [is] not bound to prove the quantity [of drugs] seized beyond a reasonable doubt," *Cox,* 934 F.2d at 1121, in order to obtain a conviction under 21 U.S.C. § 841(a); rather, the government is required only to prove the quantity of drugs attributable to the defendant by a preponderance of the evidence at sentencing in order to trigger the mandatory minimum sentences prescribed in 21 U.S.C. § 841(b), *Underwood,* 982 F.2d at 429, just as the government is required to prove such quantities by a preponderance of the evidence to establish the defendant's base offense level under the Drug Quantity Table, *U.S.S.G.* § 2D1.1(c), *United States v. Williamson,* 53 F.3d 1500, 1529 (10th Cir.), *cert. denied,* 516 U.S. 882, 116 S.Ct. 218, 133 L.Ed.2d 149 (1995), and the evidence need only possess "sufficient indicia of reliability to support its probable accuracy," *U.S.S.G.* § 6A1.3, comment.; *see United States v. Edwards,* 69 F.3d 419, 438 (10th Cir.1995), *petitions for cert. filed,* (U.S. Feb. 23, Feb. 29 & Mar. 4, 1996) (Nos. 95–1355, 95–8147 & 95–8134); *United States v. Cody,* 7 F.3d 1523, 1527 (10th Cir.1993).

*United States v. Silvers,* 84 F.3d 1317, 1320 (10th Cir.1996), *cert. denied,* 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 680 (1997). Therefore, if the court at the time of sentencing concludes that the amount of drugs attributable to the defendant are insufficient to trigger the mandatory minimum penalty, the defendant is not subject to the mandatory minimum despite the fact that the potential penalty is set forth in the indictment or other charging instrument. *See United States v. Morales,* 108 F.3d 1213, 1226 (10th Cir.1997) (affirming district court's determination that the statutory mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A) did not apply when government failed to prove that a quantity of drugs was foreseeable to the defendant).

Although this court must impose a statutorily required minimum sentence when it is greater than the applicable guideline range, *see U.S.S.G.* § 5G1.1(b), the statutory mandatory minimum sentence is only triggered upon the court's determination that the government has proven by a preponderance of the evidence that the amount of drugs is attributable to this defendant. In this case, had the court not found 100 kilograms or more of marijuana were properly attributable to Lipp, the mandatory minimum sentence established by 21 U.S.C. § 841(b)(1)(B) would not apply and the court could have sentenced Lipp to period of incarceration within the appropriately calculated guideline range.

### Issue

■ Did the court properly calculate the weight of the marijuana in a "useable" form, or did the court's calculation of the weight of the marijuana attributable to Lipp include "water weight" rendering the marijuana unusable?

### Findings of Fact

At the outset, the court notes that the answers to the issues raised by Lipp's challenge to the weight of the marijuana attributable to him could not have been

resolved without conducting an evidentiary hearing. Contrary to the government's suggestion during the evidentiary hearing, it did not introduce the reports of chemists regarding the weight of the marijuana at the trial of this matter, nor has the government otherwise furnish those reports to the court. At trial the government and all of the defendants stipulated that certain exhibits were in fact marijuana or contained THC, the active ingredient in marijuana. *See* Jury Instruction No. 28. Therefore, the court has invested a great deal of time reviewing the relevant portions of the trial transcript, the exhibit sheet and the PSI to inform and refresh the court's own independent recollection [3] of the evidence relevant to Lipp's sentence.

At the evidentiary hearing, Chappas testified that he did not believe weighing the marijuana could benefit his client, but he did so at his client's insistence.[4] The following table summarizes the amounts originally determined by the court when it imposed sentence against Lipp and the amounts Chappas testified that he determined when weighing the marijuana on November 22, 1993:

| Count of Superseding Indictment | Weight in pounds as determined by the court | Weight in kilograms as determined by the court | Weight in pounds on November 22, 1993 | Weight in kilograms on November 22, 1993 |
| --- | --- | --- | --- | --- |
| Count 5 (135 pounds) | 135 pounds | 61.24 kilograms | 89.4 pounds | 40.55 kilograms |
| Count 11 (125 pounds) | 125 pounds | 56.70 kilograms | 110.64 pounds | 50.185 kilograms |
| Count 6 (34 plants) | | 3.4 kilograms | | 3.17 kilograms |
| | | 121.3 kilograms | | 93.85 kilograms |

On its face, the disparity between 121.3 kilograms and 93.85 kilograms is difficult to understand. The court credits, however, Special Agent Halverson's testimony that the substantial disparity in weight between the time the marijuana was originally weighed when seized in 1990 and 1991 and the time that it was re-weighed on November 22, 1993, was primarily due to three events: (1) natural rotting and evaporation of the marijuana over two or three years since originally seized; (2) the loss of marijuana during its transportation to and from the KBI evidentiary storeroom, to the court house and courtroom, and after the jury's verdict, back to a secure but non-climate controlled area in the KBI's parking garage; and (3) consumption and destruction of the marijuana by mice or other rodents while stored in the KBI's parking garage.

Having considered all of the available information, the court concludes that it properly attributed more than 100 kilograms of marijuana to Lipp, and that it would do so again today if it were to resentence Lipp even at this time. Based upon its review of the trial transcript, the evidence sheet, the PSI and from its own recollection, the court finds that more than 100 kilograms of useable marijuana was attributable to Lipp. Even if the 121.3 kilograms attributed to Lipp included some water weight, the court does not believe that the water rendered the marijuana, which was sold to be used as filler for higher grades of marijuana, unuseable for its intended purpose. The trial transcript makes it seem clear that the mari-

**3.** "[A] trial judge may rely on his or her own recollections and observations when ruling on a § 2255 motion." *Polizzi v. United States,* 926 F.2d 1311, 1320 (2d Cir.1991).

**4.** Chappas' belief that weighing the marijuana would not benefit his client is essentially correct because the court attributed the full 2,000 pounds of marijuana—the object of the conspiracy—to Cooley.

juana charged in Count 11 (125 pounds) was a processed, useable amount. The trial transcript also suggests that the marijuana charged in Count 5 (135 pounds) had been picked but only partially processed. Even if the court accepted the weight of the marijuana in Counts 5 and 6 as measured on November 22, 1993, as accurate (and completely ignoring the effects of evaporation, the loss that occurred during transportation and the destruction caused by rodents), combining those amounts to the 125 pounds of useable marijuana (Count 11) as proven at trial, the total amount of marijuana attributable to Lipp still exceeds 100 kilograms (40.55 + 3.17 + 56.70 = 100.42 kilograms) and thus the mandatory minimum penalty applies.

The defendant's motion to reduce his sentence based upon the improper measurement of the weight of marijuana attributable to him is denied.

### Other Issues Raised by the Defendant

None of the other arguments raised by the defendant entitle him to any relief from his convictions or sentence. The court will address each issue.

#### Old Chief

 At trial, this court rejected the defendant's request to force the government to accept his offer to stipulate to his status of a convicted felon but excluding the nature of the underlying convictions (narcotics distribution and murder). On appeal, the Tenth Circuit agreed with the defendant that this court should have required the government to accept the defendant's stipulation, but concluded that the admission of the evidence was harmless error. *See Wacker,* 72 F.3d at 1472 (Tenth Circuit held that this district court abused its discretion in permitting the government to introduce evidence of the prior conviction after defendant offered to stipulate to the element; however, error was harmless in the face of substantial evidence of guilt).

After the Tenth Circuit's decision in *Wacker,* the Supreme Court held that it is an abuse of discretion under Federal Rule of Evidence 403 to disallow defendant's stipulation to prior felony convictions where such convictions are an element of the offense. *Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). However, the Supreme Court took no position as to whether harmless error analysis would apply to the erroneous admission of the nature of the underlying offense. *See Old Chief,* 519 U.S. at 192, 117 S.Ct. 644 ("In remanding, we imply no opinion on the possibility of harmless error, an issue not passed upon below."). Since *Old Chief* was decided, the Tenth Circuit has applied harmless error analysis to the erroneous admission of the nature of the underlying felony. *See United States v. Wilson,* 107 F.3d 774 (10th Cir.1997) (although it was *Old Chief* error to introduce evidence of the nature of a prior conviction after defendant offered to stipulate, the error was harmless because of overwhelming additional evidence assuring the "prior conviction evidence" did not substantially influence the outcome of the trial).

Lipp contends that the Tenth Circuit did not carefully evaluate the damage caused by this court's admission of the nature of his prior felonies. Because the Tenth Circuit has actually considered the issue raised by Lipp, and because there has been no intervening change in the law beneficial to Lipp, this court lacks the authority to revisit and in essence reverse the Tenth Circuit's decision. This argument therefore provides no basis for granting Lipp the relief he requests.

#### Carla Wacker

 The defendant contends that his counsel was ineffective in further investigating the credibility of Carla Wacker, a coconspirator called as a witness for the government. Although the defendant agrees that the court properly excluded evidence that Carla Wacker claimed to have performed oral sex on a law enforce-

ment officer, the defendant contends that his trial counsel should nevertheless have attempted to impeach Carla Wacker with the testimony of the law enforcement officer who denies that the sexual encounter ever occurred. The government responds, arguing that the court properly excluded evidence of the sexual encounter, and that in any event, the "government is still unaware of any evidence that might exist to prove that such a relationship did not exist." In short, the government contends that the defendant's trial counsel's performance was not constitutionally deficient in his investigation of this witness.

It is true that "trial counsel who fails to interview potential witnesses or follow up on substantial leads may be deficient." *United States v. Mealy,* 851 F.2d 890, 909 (7th Cir.1988). In this regard, the Supreme Court has explained,

> [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland v. Washington,* 466 U.S. at 691, 104 S.Ct. 2052.

In this case the defendant has not made an adequate showing that his counsel's performance was constitutionally deficient. Carla Wacker, a person who had been married to two persons at the same time on two occasions (a double-double bigamist) and a drug abuser, was grilled during cross-examination by all defense counsel, including Lipp's attorney. Carla Wacker's personal motives for testifying against the defendants were repeatedly explored. *See Van Pelt,* 1993 WL 360329 at *12 n. 7. Counsel's failure to seek to impeach Carla Wacker on a collateral matter—a matter even the defendant concedes the court properly excluded—was in no way was deficient. "[I]t is well-settled that it is not improper for the trial judge to limit im-

peachment on matters that are deemed collateral or irrelevant." *United States v. Walker,* 930 F.2d 789, 791 (10th Cir.1991); *see United States v. Ford,* 21 F.3d 759, 764 (7th Cir.1994) ("[I]t is well-settled that 'witness may not be impeached contradiction as to collateral or irrelevant matters elicited on cross-examination.' ") (quoting *Taylor v. National R.R. Passenger Corp.,* 920 F.2d 1372, 1375 (7th Cir. 1990) (quoting *Simmons, Inc. v. Pinkerton's, Inc.,* 762 F.2d 591, 604 (7th Cir. 1985))). "This rule stems from the trial judge's power under Fed.R.Evid. 403 to exclude evidence which is more prejudicial, misleading, or confusing than probative." *Walker,* 930 F.2d at 791.

"An issue is collateral if it could not be introduced for any reason other than contradiction." *United States v. Patterson,* 23 F.3d 1239, 1246 (7th Cir. 1994), *cert. denied,* 513 U.S. 1007, 115 S.Ct. 527, 130 L.Ed.2d 431 (1994). Therefore, " '[i]f the witness denies making a statement on a matter classified as collateral, his examiner must take his answer—that is, he may not prove the making of the statement by extrinsic evidence.' " *United States v. Young,* 952 F.2d 1252, 1259 (10th Cir.1991) (quoting *Walker,* 930 F.2d at 792 (citations omitted)). Stated another way,

> [t]he rule prohibits contradiction of collateral matters by extrinsic evidence but permits cross-examination on collateral points which are relevant and otherwise proper. A collateral matter, then, is one that is not so irrelevant as to preclude cross-examination, but not relevant enough to permit extrinsic evidence.

*United States v. Markarian,* 967 F.2d 1098, 1102 (6th Cir.1992). *cert. denied,* 507 U.S. 942, 113 S.Ct. 1344, 122 L.Ed.2d 726 (1993). *Cf. Palmer v. City of Monticello,* 31 F.3d 1499, 1507 n. 11. (10th Cir.1994) (" 'Like the general rule barring the use of extrinsic evidence to impeach a witness on a collateral matter through contradiction, the purpose of Rule 608(b)'s prohibition of extrinsic evidence is to avoid holding mini-

trials on irrelevant or collateral matters.' ") (quoting *United States v. Beauchamp,* 986 F.2d 1, 3 n. 1 (1st Cir.1993)). Because the court would not have permitted counsel to impeach Carla Wacker on a collateral matter, Lipp suffered no prejudice from his counsel's performance.

### Admission of Front Sheets

The defendant complains that the court erroneously admitted front sheets prepared by Edith Wacker, his codefendant and coconspirator, and that the admittance of that evidence denied him a fair trial. The government responds, arguing that the Tenth Circuit already considered and rejected this argument. The government does not, however, favor the court with a copy of the defendants' appellate briefs or its own.

▆ The Tenth Circuit's opinion affirming the defendant's convictions expressly discusses the front sheets and their relevance in this case. Implicit in the Tenth Circuit's decision affirming the defendant's conviction is its rejection of many of the challenges Lipp now advances. Even if the Tenth Circuit's decision was not dispositive, the court would nevertheless conclude that the defendant's due process rights were not violated by the admission of the front sheets because the evidence established that those documents were maintained by Edith Wacker, a coconspirator, for the purpose of maintaining records regarding the criminal enterprise and were therefore admissible under Fed.R.Evid. 801(d)(2)(E). The defendant's other arguments regarding authenticity of the front sheets, the identity of the author, and Edith Wacker's subsequent statements to the PSI writer in her case ostensibly denying that those records were front sheets neither singularly nor combined convince the court that the defendant was denied a fair trial.

### Summary

None of the errors alleged by Lipp entitle him to a reversal of any conviction or a sentence lower than the mandatory minimum of 120 months. The court finds that Lipp has not met his burden of proving by a preponderance of the evidence that his counsel's performance fell below an objective standard of reasonableness. *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *Lema v. United States,* 987 F.2d 48, 51 (1st Cir.1993) ("The burden is on the petitioner to demonstrate ineffective assistance by a preponderance of the evidence."); *cf., United States v. Edmonson,* 922 F.Supp. 505, 510 (D.Kan.1996) ("In section 2255 motions . . . the petitioner has the burden of proving that his sentence is invalid.") (*quoting Greene v. United States,* 880 F.2d 1299, 1303 n. 6 (11th Cir.1989), *cert. denied,* 494 U.S. 1018, 110 S.Ct. 1322, 108 L.Ed.2d 498 (1990)), *aff'd,* 107 F.3d 22, 1997 WL 43529 (10th Cir.), *cert. denied,* 521 U.S. 1128, 117 S.Ct. 2531, 138 L.Ed.2d 1030 (1997). Nor was Lipp deprived of a fair trial. In short, nothing argued or presented by Lipp demonstrates that he is entitled to relief from his convictions or the sentence imposed as a result of those convictions.

IT IS THEREFORE ORDERED that Lipp's "Motion to Vacate, Set Aside or Correct Sentence By a Person in Federal Custody" (Dk.813) is denied.